UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| BEYOND PESTICIDES, 701 E Street, SE, Suite 200, Washington, DC 20003,<br><br>Plaintiff,<br><br>v.<br><br>EXXON MOBIL CORPORATION, 5959 Las Colinas Boulevard, Irving, Texas 75039,<br><br>Defendant. | Civil Action No. _____ |

## NOTICE OF REMOVAL

Defendant Exxon Mobil Corporation ("ExxonMobil") hereby removes this action from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia pursuant to 28 U.S.C. §§ 1332(a), (d); 1367; 1441(a), (b); 1446; and 1453(b),[1] and states as follows:

### I.   TIMELINESS OF REMOVAL

1. Plaintiff Beyond Pesticides filed this action against ExxonMobil on May 15, 2020, in the District of Columbia Superior Court as Civil Action No. 2020 CA 002532 B.  ExxonMobil was served on June 16, 2020.

2. This Notice of Removal is timely because it is filed within 30 days of service.  *See* 28 U.S.C. § 1446(b).

---

[1] By filing this Notice of Removal, ExxonMobil does not waive any right, defense, affirmative defense, or objection, including any challenges to personal jurisdiction over ExxonMobil.  *See, e.g.*, *Rivera* v. *Bally's Park Place, Inc.*, 798 F. Supp. 2d 611, 615 (E.D. Pa. 2011).

## II.    NATURE OF THE ACTION

3.    Plaintiff, a citizen of the District of Columbia, brings suit on its own behalf and that of District of Columbia consumers, against an out-of-state defendant, seeking injunctive relief that, if granted, would cost well in excess of $75,000.  The Court has subject matter jurisdiction over this action because it may exercise diversity jurisdiction, 28 U.S.C. §§ 1332, 1441(b), as well as jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).[2]

4.    Beyond Pesticides, a nonprofit incorporated and based in the District of Columbia, brought this suit purportedly seeking to address the "concern[s]" of the "citizens of the District of Columbia and the country" about the "[d]ramatic changes to the Earth's climate."  Compl. ¶ 1. Plaintiff claims that ExxonMobil, which is incorporated in New Jersey and has its principal place of business in Texas, engaged in unlawful trade practices in violation of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3904 *et seq.*, through allegedly "misleading representations" concerning ExxonMobil's investment in alternative energy, which Plaintiff claims harms the "D.C. consumers" it purports to represent.  Compl. ¶¶ 116, 144.

5.    Plaintiff acknowledges that ExxonMobil "invest[s] resources into clean, renewable, and less environmentally impactful forms of energy" totaling "$1 billion per year" and "$9 billion since 2000."  *Id.* ¶¶ 7, 45.  But Plaintiff says ExxonMobil has not done enough.  According to Plaintiff, it is misleading for ExxonMobil to make accurate disclosures about its investments in alternative energy because the investments ExxonMobil makes are, from Plaintiff's perspective, not a sufficiently "significant proportion of its overall business," which includes capital expenditures in conventional energy of approximately $465 billion since 2000. *Id.* ¶¶ 10, 52.

---

[2] ExxonMobil reserves the right to further elaborate on these grounds beyond their specific articulations in this Notice.

Plaintiff complains that ExxonMobil's "investment in renewable energy and [carbon capture and storage] are dwarfed by its core business of traditional fossil fuel production." *Id.* ¶ 44. In Plaintiff's telling, ExxonMobil must either make a larger investment in renewable energy (presumably in the tens of billions of dollars annually) or cease making accurate, truthful disclosures about the investments it has made.

6. Plaintiff seeks "injunctive relief putting an end to ExxonMobil's deceptive and unfair business practices" and "halt[ing] ExxonMobil's false marketing and advertising," *id.* ¶¶ 16, 119, as well as costs and attorneys' fees, and declaratory relief. *Id.* at 26. By Plaintiff's own admission, the advertising it seeks to enjoin costs well over $75,000, as would any meaningful increase in ExxonMobil's investments in alternative energy, which, by Plaintiff's own admission once again, already exceeds $1 billion per year. *See id.* ¶¶ 45-52, 108.

### III.   GROUNDS FOR REMOVAL

#### Diversity Jurisdiction

7. This action is removable under 28 U.S.C. § 1332 and § 1441 because the action is between citizens of different states and the amount in controversy far exceeds $75,000.

8. A defendant may remove "any civil action brought in State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).

9. Federal district courts have "original," diversity jurisdiction over civil actions for which (1) there is "complete diversity," meaning that no plaintiff is a citizen of the same State as any defendant; and (2) the amount in controversy "exceeds the sum or value of $75,000." *Id.* § 1332(a); *Lincoln Prop. Co.* v. *Roche*, 546 U.S. 81, 89 (2005). Both criteria are satisfied here.

10. "[C]omplete diversity" is present because the sole Plaintiff and the sole Defendant in this action are citizens of different states. 28 U.S.C. § 1332(a)(1); *see also id.* § 1332(e) (providing that the District of Columbia is a "State" for purposes of Section 1332(a)(1)). For

purposes of diversity jurisdiction, a corporation—including a not-for-profit corporation—is a citizen of the state in which it is incorporated, and the state in which it has its principal place of business. *Id.* § 1332(c)(1); *see North* v. *Smarsh, Inc.*, 160 F. Supp. 3d 63, 79 (D.D.C. 2015).

11. Plaintiff Beyond Pesticides is a citizen of the District of Columbia. "Beyond Pesticides is a 501(c)(3) non-profit, public-interest organization" that is incorporated and "based in the District of Columbia." Compl. ¶¶ 124-25; Ex. 1 (District of Columbia Business Registration Query, "Beyond Pesticides").[3]

12. By contrast, ExxonMobil is a publicly traded corporation that is incorporated in New Jersey and has its primary place of business in Texas. *See* Compl. ¶ 134.

13. The "in-state defendant rule" does not bar removal of this case because Defendant ExxonMobil is not a citizen of the District of Columbia and therefore is not "a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

14. The amount in controversy also far "exceeds the sum or value of $75,000." *Id.* § 1332(a)(1). In measuring the amount in controversy for purposes of diversity jurisdiction, a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint. *See Lovelle* v. *State Farm Mut. Auto Ins. Co.*, 235 F. Supp. 3d 217, 223-24 (D.D.C. 2017). For purposes of removal, a defendant's notice "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co.* v. *Owens*, 574 U.S. 81, 89 (2014); *accord Beyond Pesticides* v. *Dr. Pepper Snapple Grp., Inc.*, 322 F. Supp. 3d 119, 121 (D.D.C. 2018).

---

[3] "Ex." refers to an Exhibit attached to this Notice of Removal.

15. Where, as here, a plaintiff seeks injunctive relief, the amount in controversy is "measured by the value of the object of the litigation," *Hunt* v. *Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977); *see* Compl. ¶ 119, which can be satisfied either by the "value of the right that plaintiff seeks to enforce or to protect" or "the cost to the defendant[] to remedy the alleged denial," *Smith* v. *Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978); *accord Pietrangelo* v. *Refresh Club, Inc.*, Civ. No. 18-1943, 2019 WL 2357379, at *8 (D.D.C. June 4, 2019). Thus, "[t]he value of injunctive relief for determining the amount in controversy can be calculated as the cost to the defendant." *GEO Specialty Chems., Inc.* v. *Husisian*, 951 F. Supp. 2d 32, 39 (D.D.C. 2013).

16. Here, Plaintiff "seeks relief including an injunction to halt ExxonMobil's false marketing and advertising." Compl. ¶ 16. The value of such an injunction would far exceed $75,000 given that the Complaint identifies no fewer than 15 distinct statements that it deems objectionable, including multiple television advertisements—one of which Plaintiff claims generated "over 1.8 billion impressions." *Id.* ¶¶ 16, 34, 38, 40. Indeed, Plaintiff alleges that ExxonMobil's expenditures on television advertising in 2019 alone totaled $24.9 million. *Id.* ¶ 108 (citing *Insights Report Vehicle: Oil & Fuel Advertising on TV*, iSpot.tv, at 4 (2019), Ex. 2). In light of those substantial expenditures, overhauling ExxonMobil's existing advertising campaigns to meet Plaintiff's specifications would indisputably exceed $75,000. It is thus not only "plausible"—but effectively admitted—that the cost to ExxonMobil of complying with Plaintiff's requested relief would exceed $75,000. *See Dart Cherokee*, 574 U.S. at 89.

17. Insofar as Plaintiff seeks "injunctive relief putting an end to ExxonMobil's deceptive and unfair business practices" by altering ExxonMobil's business practices (and not merely its advertisements), Compl. ¶ 119, the amount in controversy is even higher. According to

the Complaint, ExxonMobil engaged in deceptive and unfair business practices because "ExxonMobil represents that it engages in cleaner forms of energy at a significant level, when in fact, its *core business* remains entrenched in the production and delivery of fossil fuels." *Id.* ¶ 140 (emphasis added). Even assuming this described a cognizable "deceptive and unfair business practice[]"—which it does not[4]—"putting an end" to said practice would require ExxonMobil to substantially increase its investments in renewable energy beyond the $1 billion annual investment that Plaintiff considers to be "too little." *Id.* ¶¶ 119, 140. Such an investment would surely exceed $75,000 by many, many multiples.

18. Plaintiff claims that ExxonMobil engaged in deceptive and unfair business practices because the "size of its investments" in clean energy is "small . . . relative to the overall size of ExxonMobil's business." *Id.* ¶ 51. For instance, Plaintiff argues that although ExxonMobil invests "$1 billion annually . . . in its 'ongoing commitment to fundamental science and innovation,'" any discussion of these investments is inherently misleading because they represent "just **3.2%** of ExxonMobil's total capital expenditures in 2019." *Id.* (emphasis added). Similarly, Plaintiff complains that the "$9 billion" ExxonMobil dedicated to "environmentally beneficial investments" represents "no more than **2%** of ExxonMobil's capital expenditures in the past 20 years," which totaled "$465 billion." *Id.* ¶ 52 (emphasis added).

---

[4] ExxonMobil does not concede—and in fact denies—that Plaintiff is entitled to any of the relief it seeks. A plaintiff's claim "fixes the right of the defendant to remove" whether "well or ill-founded in fact." *St. Paul Mercury Indem. Co.* v. *Red Cab Co.*, 303 U.S. 283, 294 (1938); *accord Griffin* v. *Coastal Int'l Sec., Inc.*, Civ. No. 06-2246, 2007 U.S. Dist. LEXIS 40041, at *7 (D.D.C. June 4, 2007); *see also* 14B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3702.1 (4th ed. 2020) ("[A] defendant who seeks to prove that the amount in controversy is greater than the jurisdictional amount does not automatically concede that the jurisdictional amount is recoverable.").

19. According to the Complaint, ExxonMobil had total capital expenditures of over $465 billion since 2000, and $31.1 billion in 2019 alone. *Id.* ¶¶ 48, 52. Bringing its investments in renewable energy to just **5%** of capital expenditures would require ExxonMobil to invest $1.6 billion on an annual basis. That would impose an additional $600 million annual cost on ExxonMobil—assuming an increase to 5% would be sufficient to resolve Plaintiff's allegations. Given the magnitude of the investments ExxonMobil already makes in renewable energy, any increase sufficient to address Plaintiff's allegations of deception would necessarily exceed the $75,000 jurisdictional threshold. *See Dart Cherokee*, 574 U.S. at 89.

20. In addition to the costs of compliance with Plaintiff's requested injunction, the amount in controversy also includes Plaintiff's separate request for "reasonable attorneys' fees." Compl. at 26, Prayer for Relief (C).

21. It is well established that attorneys' fees "may be counted towards establishing a jurisdictional amount when they are provided for by . . . statute in controversy," *Parker-Williams* v. *Charles Tini & Assocs., Inc.*, 53 F. Supp. 3d 149, 153 (D.D.C. 2014) (internal quotation marks omitted), as they are in the CPPA, *see* D.C. Code § 28-3905(k)(2)(B). And attorneys' fee awards under the CPPA routinely exceed the $75,000 jurisdictional threshold on their own. *See, e.g.*, *Williams* v. *First Gov't Mortg. & Inv'rs. Corp.*, 225 F.3d 738, 745-47 (D.C. Cir. 2000) ($199,340); *Beck* v. *Test Masters Educ. Servs., Inc.*, 73 F. Supp. 3d 12, 20 (D.D.C. 2014) ($854,623.90); *In re InPhonic, Inc.*, 674 F. Supp. 2d 273, 289 (D.D.C. 2009) ($453,885.31); *Dist. Cablevision L.P.* v. *Bassin*, 828 A.2d 714, 718 (D.C. 2003) ($425,916.25); *Jackson* v. *Byrd*, Civ. No. 01-825, 2004 WL 3249692, at *4 (D.C. Super. Ct. Sept. 2, 2004) ($196,000). As of 2017, Plaintiff's lead counsel, Kim Richman, has sought statutory attorneys' fees at $700.00 per hour. *See* Decl. Kim Richman Supp. Pls.' Mot. Att'ys' Fees, Costs, & Incentive Awards ("Richman Decl.") 6, *Charvat*

v. *Plymouth Rock Energy, LLC*, Civ. No. 15-4106 (E.D.N.Y. Oct. 5, 2017), ECF No. 57-2; Suppl. Decl. Kim Richman Supp. Pl.'s Mot. Service Award, Att'ys' Fees & Costs ¶ 19, *Abante Rooter & Plumbing Inc.* v. *N.Y. Life Ins. Co.*, Civ. No. 16-3588 (S.D.N.Y. Oct. 2, 2017), ECF No. 51.  At that rate, the amount in controversy will exceed $75,000 so long as Mr. Richman *alone* bills just 110 hours to this complex litigation.[5]  Given the nature of Plaintiff's novel suit, it is not only plausible, but highly probable that the attorneys' fees here will on their own exceed $75,000.

22.     Finally, insofar as Plaintiff might seek civil damages, those would be well in excess of $75,000.  The CPPA awards treble damages to prevailing plaintiffs, which could yield up to $1,500 per purchase of ExxonMobil's products.  *See* D.C. Code 28-3905(k)(2)(A); *Zuckman* v. *Monster Beverage Corp.*, 958 F. Supp. 2d 293, 300-01 (D.D.C. 2013).  Based on the extent of ExxonMobil's alleged sales within the District of Columbia, *see, e.g.*, Compl. ¶ 135, statutory damages would thus quickly exceed $75,000.

23.     In sum, because the parties are "completely diverse," and the amount in controversy more than plausibly exceeds $75,000, this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a).

## Class Action Fairness Act

24.     In the alternative, and since Plaintiff seeks to bring this action on behalf of a class of District of Columbia consumers, this Court has original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because Plaintiff expressly seeks to represent a class of D.C. consumers and CAFA's statutory requirements are satisfied.

25.     CAFA permits removal of (1) any "class action;" (2) where minimal diversity exists; (3) at least 100 class members are represented; and (4) "the matter in controversy exceeds

---

[5] Mr. Richman's of counsel and associate each bill at $450.00 per hour.  *See* Richman Decl. 6.

the sum or value of $5,000,000, exclusive of interests and costs." 28 U.S.C. § 1332(d)(1), (2), (5); *Bradford* v. *George Wash. Univ.*, 249 F. Supp. 3d 325, 332 (D.D.C. 2017); *see also* 28 U.S.C. § 1453(b).  Each criterion is satisfied here.

26.   CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). CAFA's legislative history provides that "the definition of 'class action' is to be interpreted liberally.  Its application should not be confined solely to lawsuits that are labelled 'class actions.' Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions." S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34 (formatting altered); *see also McMullen* v. *Synchrony Bank*, 82 F. Supp. 3d 133, 140 (D.D.C. 2015) (relying on CAFA's legislative history to interpret its scope).  In other words, CAFA permits removal of a suit that is "in substance a class action" notwithstanding a plaintiff's "attempt to disguise the true nature of the suit." *Addison Automatics, Inc.* v. *Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013); *see, e.g.*, *Williams* v. *Empl'rs Mut. Cas. Co.*, 845 F.3d 891, 901-02 (8th Cir. 2017); *Song* v. *Charter Commc'ns, Inc.*, Civ. No. 17-325, 2017 WL 1149286, at *1 n.1 (S.D. Cal. Mar. 28, 2017).

27.   This action is a putative "class action" under CAFA.  Beyond Pesticides purports to bring this action "on behalf of the interests of a consumer or ***a class of consumers***, . . . seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action under subparagraph (A) of this paragraph for relief from such use by such person of such trade practice."  Compl. ¶ 151 (emphasis added); *see also id.* ¶ 123.  Plaintiff further represents that ExxonMobil "deceiv[ed] consumers," *id.* ¶¶ 12, 107, and

9

that "Beyond Pesticides has a sufficient nexus to consumers of ExxonMobil's services to adequately represent those interests." *Id.* ¶ 132.

28.     By filing a suit under D.C. Code § 28-3905(k)(1)(D)(i) and styling its action as a representative suit brought on behalf of a class of D.C. consumers, Plaintiff has chosen to bring what is in substance a putative class action: a "representative suit[] on behalf of [a] group[] of persons similarly situated." 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 1.1 (4th ed. 2002). Indeed, District of Columbia courts have recently explained that such suits under the CPPA are necessarily subject to the "framework long established by" D.C. Superior Court Rule of Civil Procedure 23, *Rotunda* v. *Marriot Int'l, Inc.*, 123 A.3d 980, 982 (D.C. 2015), which is in all relevant respects "identical"—not merely "similar"—to Federal Rule of Civil Procedure 23, *see* D.C. Super. Ct. R. Civ. P. 23 cmt. *But see Nat'l Consumers League* v. *Gen. Mills Inc.*, 680 F. Supp. 2d 132, 136-37 (D.D.C. 2010) (CPPA suit on behalf of the "general public" of the District of Columbia).

29.     Minimal diversity is also more than satisfied here because complete diversity is in fact present. Minimal diversity demands only that "any member of a class of plaintiffs" be "a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). The putative class of the District of Columbia consumers includes citizens of the District of Columbia. Compl. ¶¶ 151-52. By contrast, ExxonMobil is a citizen of Texas and New Jersey for the reasons stated above. *See supra* ¶ 12.

30.     The requisite class size is present here, too. The District of Columbia consumers on whose behalf Plaintiff sues exceeds 100 purported class members. *See* 28 U.S.C. § 1332(d)(5)(B); *Quick Facts: District of Columbia*, U.S. Census Bureau (July 1, 2019),

https://www.census.gov/quickfacts/DC (estimating the District of Columbia population at 705,749); Compl. ¶¶ 151-52.

31.     Finally, given the cost to ExxonMobil of complying with Plaintiff's requested relief—well over $75,000 in advertising costs and at least $1.6 billion in energy investments—plus attorneys' fees and civil damages, the amount in controversy far exceeds the $5,000,000 threshold.  *See* 28 U.S.C. § 1332(d)(2); *supra* ¶¶ 16-22.

32.     CAFA jurisdiction is therefore proper because Plaintiff has filed what is in substance a "class action" on behalf of more than 100 purported class members, for which there is (greater than) minimal diversity, and an amount in controversy in excess of $5,000,000.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS FOR REMOVAL

33.     Based on the foregoing, this Court has original jurisdiction over this action under 28 U.S.C. §§ 1332, 1441(b) (diversity jurisdiction), and 28 U.S.C. §§ 1332(d), 1453(b) (CAFA).

34.     The United States District Court for the District of Columbia is the appropriate venue for removal under 28 U.S.C. §1441(a) because the Superior Court of the District of Columbia, where this suit was originally filed, is within the District of Columbia.

35.     In accordance with 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders received by ExxonMobil is attached as Exhibit 3.

36.     Pursuant to 28 U.S.C. § 1446(d), ExxonMobil will promptly provide written notice of this filing to all adverse parties, and file a copy of this Notice of Removal with the clerk of the Superior Court of the District of Columbia.  A copy of this filing (without exhibits) is attached as Exhibit 4.

37.     This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11, as required by 28 U.S.C. § 1446(a).

38. ExxonMobil reserves the right to amend or supplement this Notice of Removal. ExxonMobil also reserves all rights, defenses, and objections available under applicable law. The filing of this Notice of Removal is subject to, and without waiver of, any such defenses or objections.

WHEREFORE, ExxonMobil respectfully gives notice that this action is hereby removed from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia.

DATE: July 6, 2020

Respectfully submitted,

EXXON MOBIL CORPORATION,

By its attorneys,

| | |
|---|---|
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP | EXXON MOBIL CORPORATION |
| /s/ Theodore V. Wells, Jr. | Patrick J. Conlon |
| Theodore V. Wells, Jr. | patrick.j.conlon@exxonmobil.com |
| Daniel J. Toal* | 22777 Springwoods Village Parkway |
| twells@paulweiss.com | Spring, TX 77389 |
| dtoal@paulweiss.com | Tel: (832) 624-6336 |
| 1285 Avenue of the Americas | |
| New York, NY 10019-6064 | |
| Tel: (212) 373-3000 | |
| Fax: (212) 757-3990 | |

Justin Anderson
janderson@paulweiss.com
2001 K Street, NW
Washington, DC 20006-1047
Tel: (202) 223-7300
Fax: (202) 223-7420

*Pro hac vice* forthcoming