**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BEYOND PESTICIDES, <br><br>                    Plaintiff, <br><br>       v. <br><br> EXXON MOBIL CORPORATION, <br><br>                 Defendant. | Case No. 1:20-cv-01815-TJK <br><br><br> Hon. Timothy J. Kelly |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINITFF'S MOTION TO REMAND AND FOR FEES AND COSTS**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ................................................................................................................... **1**

**ARGUMENT** ......................................................................................................................... **2**

    **I.**    **Diversity Jurisdiction Is Not Present Here Because ExxonMobil's Cost of Compliance with an Injunction Will Not Exceed $75,000 on a Pro Rata Basis.** ................. **2**

    **II.**    **The Class Action Fairness Act Does Not Provide Jurisdiction Because This is Not a "Class Action" as Defined by the Act.** ................................................................................ **7**

    **III.**    **Plaintiff Is Entitled to Fees and Costs** ........................................................................ **11**

**CONCLUSION** .................................................................................................................... **12**

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Animal Legal Def. Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d 53 (D.D.C. 2017) (Kollar-Kotelly, J.).................................................................................................................. 3, 4, 11, 12

*Ballard v. District of Columbia*, 813 F. Supp. 2d 34 (D.D.C. 2011) (Roberts, J) ........................ 2

*Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117 (9th Cir. 2014) ...................................... 8, 9

*Breakman v. AOL LLC*, 545 F. Supp. 2d 96 (D.D.C. 2008) (Bates, J.) ................................... 4, 12

*Breathe DC v. Santa Fe Natural Tobacco Co.*, 232 F. Supp.3d 163 (D.D.C. 2017) (Huvelle, J.) . 4

*Busby v. Capital One, N.A.*, 841 F. Supp. 2d 49 (D.D.C. 2012) (Urbina, J.) ............................... 2

*Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538 (3rd Cir. 1995) .............................. 6

*Fahey v. Godiva Chocolatier, Inc.*, No. 19-2128 (JDB), 2020 U.S. Dist. LEXIS 27073 (D.D.C. Feb. 18, 2020) ......................................................................................................................... 6

*Food & Water Watch, Inc. v. Tyson Foods, Inc.*, No. 19-cv-2811 (APM), 2020 U.S. Dist. LEXIS 38232 (D.D.C. Mar. 5, 2020)....................................................................................... 3

*Hackman v. One Brands, LLC*, No. 18-2101 (CKK), 2019 U.S. Dist. LEXIS 55635 (D.D.C. Apr. 1, 2019) ........................................................................................................... 3, 8, 10, 12

*Inst. for Truth in Mktg v. Total Health Network Corp.*, 321 F. Supp. 3d 76 (D.D.C. 2018) (Jackson, J.)................................................................................................................................ 3

*Martin v. Franklin Cap. Corp.*, 546 U.S. 132 (2005) .................................................................. 11

*Massachusetts v. Exxon Mobil Corp.*, No. 19-cv-12430, 2020 U.S. Dist. LEXIS 93153 (D. Mass. May 28, 2020) ................................................................................................................... 9

*Nat'l Consumers League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64 (D.D.C. 2014) (Lamberth, J.)............................................................................................................................................... 5

*Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26 (D.D.C. 2014) (Huvelle, J.)......................................................................................................................................... 7, 8, 9

*Organic Consumers Ass'n v. Handsome Brook Farm Group 2, LLC*, 222 F. Supp. 3d 74 (2016). ................................................................................................................................... 4, 5, 12

*Organic Consumers Ass'n v. R.C. Bigelow, Inc.*, 314 F. Supp. 3d 344 (D.D.C. 2018) (Walton, J.) ................................................................................................................................... 3, 12

*Rotunda v. Marriot Int'l, Inc.*, 123 A.3d 980 (D.C. 2015) ................................................. 9, 10, 11

*Sloan v. Soul Circus, Inc.*, No. 15-01389, 2015 U.S. Dist. LEXIS 169565 (D.D.C. Dec. 18, 2015) (Contreras, J.)................................................................................................................ 12

*Smith v. Abbott Laboratories, Inc.*, No. 16-501 (RJL), 2017 U.S. Dist. LEXIS 135478 (D.D.C. Mar. 31, 2017).............................................................................................................. 4, 10, 12

*Snyder v. Harris*, 394 U.S. 332 (1969) ...................................................................................... 3, 4

*Stein v. American Exp. Travel Related Servs.*, 813 F. Supp. 2d 69 (D.D.C. 2011) (Kessler, J.).. 11

*Witte v. Gen. Nutrition Corp.*, 104 F. Supp. 3d 1 (D.D.C. 2015) (Huvelle, J.) ...................... 4, 12

*Zahn v. International Paper Corp.*, 414 U.S. 291 (1973)................................................................ 4

**Statutes**

28 U.S.C. § 1332(a) ....................................................................................................................... 3

28 U.S.C. § 1332(d) ............................................................................................................... passim

28 U.S.C. § 1441(a) ....................................................................................................................... 2

28 U.S.C. § 1447(c) ..................................................................................................................... 11

D.C. Code § 28-3901 ................................................................................................ passim
D.C. Code § 28-3905(k)(1)(B) ................................................................................. 10
D.C. Code § 28-3905(k)(1)(D) ....................................................................... 1, 7, 8, 9

**<u>Other Authorities</u>**

Wright & Miller, 14A Federal Practice and Procedure § 3702 ..................................... 5

**<u>Rules</u>**

Fed. R. Civ. P. 23 ................................................................................................ 8, 9
Super. Ct. Civ. R. 23 ........................................................................................... 7, 9

## <u>INTRODUCTION</u>

This is a private-attorney-general action filed by a nonprofit public-interest organization on behalf of itself and the general public of the District of Columbia pursuant to D.C. Code § 28-3905(k)(1)(D). Plaintiff Beyond Pesticides, a nonprofit organization headquartered in the District of Columbia, alleges that Defendant ExxonMobil Corporation ("ExxonMobil") engages in false and deceptive marketing by falsely representing that its investments and activities in "clean" energy and environmentally beneficial technology comprise a large percentage of its overall business. The Complaint states one count: violation of the D.C. Consumer Protection Procedures Act ("CPPA"), Code § 28-3901 *et seq.* (Compl. ¶¶ 138-154) and seeks only declaratory and injunctive relief to stop the conduct directed at consumers in the District of Columbia (*id.* Prayer for Relief ("Prayer")). No money damages are requested on behalf of Beyond Pesticides or anyone else.

ExxonMobil's Notice of Removal cites two grounds for federal jurisdiction. ***First,*** ExxonMobil claims federal diversity jurisdiction exists, stating that the amount of controversy exceeds $75,000. But ExxonMobil makes this assertion without sufficient evidence of its cost of compliance and without reference to the settled law of this District. Under the non-aggregation principle long established in this District, the cost of compliance with injunctive relief and attorneys' fees must be divided pro rata among potential beneficiaries of that relief for purposes of determining the amount in controversy. Because ExxonMobil offers no plausible basis on which to conclude that its costs of compliance in this case would exceed $75,000 per member of the general public of the District, it fails to demonstrate that diversity jurisdiction is present here.

***Second,*** ExxonMobil invokes federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), purporting that representative actions brought under the CPPA

are treated identically to class actions by D.C. courts. Here again, ExxonMobil disregards well-established precedent in this District, which clarifies that only representative actions under the CPPA that seek damages are subject to class-like treatment. Because Beyond Pesticides seeks only declaratory and injunctive relief in this case, federal jurisdiction pursuant to CAFA is not present here.

In short, ExxonMobil's removal of this case lacks any reasonable basis. ExxonMobil's arguments ignore the settled law of this Court, which has **_uniformly_** found that similar false-advertising cases—arising under the DC CPPA and seeking only injunctive and declaratory relief—must be remanded. Accordingly, Beyond Pesticides respectfully requests that its motion to remand be granted.

## <u>ARGUMENT</u>

Pursuant to 28 U.S.C. § 1441(a), a civil action filed in state court may be removed to a United States District Court only if the case originally could have been brought in federal court. "Courts in this circuit have construed removal jurisdiction strictly, favoring remand where the propriety of removal is unclear." *Ballard v. District of Columbia*, 813 F. Supp. 2d 34, 38 (D.D.C. 2011) (Roberts, J); *see also Busby v. Capital One, N.A.*, 841 F. Supp. 2d 49, 53 (D.D.C. 2012) (Urbina, J.) ("Courts must strictly construe removal statutes. The court must resolve any ambiguities concerning the propriety of removal in favor of remand." (citations omitted)). "When the plaintiff makes a motion to remand, the defendant bears the burden of proving federal jurisdiction." *Id.*

I. **Diversity Jurisdiction Is Not Present Here Because ExxonMobil's Cost of Compliance with an Injunction Will Not Exceed $75,000 on a Pro Rata Basis.**

ExxonMobil's first stated ground for removal is federal diversity jurisdiction. (Notice of Removal ("Notice") (ECF No. 1) at ¶ 7.) Beyond Pesticides is a public-interest organization that

brings this CPPA action on behalf of itself and the general public pursuant to § 3905(k)(1)(D). (Compl. Preamble, ¶¶ 16, 124, 137-154.) Beyond Pesticides' Complaint seeks only injunctive and declaratory relief. (*Id.* Prayer.) According to long-standing, uniform precedent in this District, when a CPPA case on behalf of the general public seeks only declaratory and injunctive relief, the cost of compliance must be calculated on a per-affected-individual basis, according to the non-aggregation principle of *Snyder v. Harris*, 394 U.S. 332, 335 (1969). That is, in order to establish federal diversity jurisdiction, ExxonMobil is required to establish that the $75,000 jurisdictional minimum, *see* 28 U.S.C. § 1332(a), is met on a ***pro rata*** basis divided among the members of the D.C. general public represented in this litigation. Relevant decisions, issued over the last dozen years and as recently as March, include at least these:

- *Food & Water Watch, Inc. v. Tyson Foods, Inc.*, No. 19-cv-2811 (APM), 2020 U.S. Dist. LEXIS 38232, at **15-16 (D.D.C. Mar. 5, 2020): "Accordingly, consistent with the decisions of courts in this District, the court finds that for purposes of calculating the amount in controversy, the cost of the injunction to Defendant must be divided pro rata among the members of the general public of the District of Columbia.";

- *Hackman v. One Brands, LLC*, No. 18-2101 (CKK), 2019 U.S. Dist. LEXIS 55635, at *18 (D.D.C. Apr. 1, 2019): "Accordingly, the Court follows the vast weight of authority in this Circuit and concludes that the non-aggregation principle should be applied to the cost of Defendant's compliance with an injunction.";

- *Inst. for Truth in Mktg v. Total Health Network Corp.*, 321 F. Supp. 3d 76, 91 (D.D.C. 2018) (Jackson, J.): "Consistent with persuasive precedents in this district, this Court concludes that the appropriate measure of the requested injunctive relief is not the amount that Total Health must spend to comply with the injunction, but that amount *divided by* the number of members of the public on whose behalf Plaintiff brings the action.";

- *Organic Consumers Ass'n v. R.C. Bigelow, Inc.*, 314 F. Supp. 3d 344, 350 (D.D.C. 2018) (Walton, J.): "[T]he overwhelming weight of authority within th[is] District indicates that defendants seeking to remove [CPPA] actions cannot rely on the total cost of compliance with the plaintiff's requested injunction to establish the amount-in-controversy, as that would violate the non-aggregation principle set forth by the Supreme Court.";

- *Animal Legal Def. Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d 53, 59 (D.D.C. 2017) (Kollar-Kotelly, J.): "[A]lthough the cost to the defendant is one available measure of the amount in controversy, the Court concludes that it would not be an appropriate measure to

apply in this particular case because to do so would not comport with the non-aggregation principle.";

- *Smith v. Abbott Laboratories, Inc.*, No. 16-501 (RJL), 2017 U.S. Dist. LEXIS 135478, at *4 (D.D.C. Mar. 31, 2017): "[T]he overwhelming weight of authority within the District indicates that defendants seeking to remove [CPPA] actions cannot rely on the total cost of compliance with the plaintiff's requested injunction to establish the amount-in-controversy, as that would violate the non-aggregation principle set forth by the Supreme Court.";

- *Breathe DC v. Santa Fe Natural Tobacco Co.*, 232 F. Supp.3d 163, 171 (D.D.C. 2017) (Huvelle, J.): "The Court must consider whether the total cost of compliance divided among the beneficiaries still meets the amount in controversy.";

- *Organic Consumers Ass'n v. Handsome Brook Farm Grp. 2, LLC*, 222 F. Supp. 3d 74, 78 (2016): "Consistent with this prior authority, the Court finds that the individual cost to *each* plaintiff must exceed $75,000 for jurisdiction to exist. Because Handsome Brook has made no attempt to show that the $75,000 threshold is met for each plaintiff, it has not established that diversity jurisdiction exists.";

- *Witte v. Gen. Nutrition Corp.*, 104 F. Supp. 3d 1, 6 (D.D.C. 2015) (Huvelle, J.): "Defendants' argument—that this Court should consider their total compliance costs in calculating the amount in controversy—would circumvent the non-aggregation principle articulated in *Snyder* and *Zahn* [*v. International Paper Corp.*, 414 U.S. 291 at 294 (1973)].”; and

- *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 105 (D.D.C. 2008) (Bates, J.): "[T]his Court agrees that the cost-to-defendant test is inapplicable to the current diversity action. That result is, moreover, consistent with the general rule that the proper measure of the amount in controversy is from the perspective of the relief sought by the plaintiff."

ExxonMobil's assertion that the request for attorneys' fees can establish the jurisdictional minimum similarly fails to take the non-aggregation principle into account. In a private-attorney-general CPPA claim, attorneys' fees, like the cost of injunctive relief, must be considered for jurisdictional purposes on a pro rata basis, divided amongst the consumers on whose behalf the suit is brought: "Plaintiff argues that considering the total amount of attorneys' fees in a DCCPPA case brought on behalf of the general public would not comport with the non-aggregation principle. [] This position finds considerable support in a number of district court opinions from this Circuit." *Animal Legal Def. Fund*, 249 F. Supp. 3d at 62 (collecting cases). Alternatively, when a private

attorney general sues for CPPA injunction, without damages, courts may determine the amount of attorneys' fees for jurisdictional purposes to be $0:

> Courts in this district generally agree that if attorneys' fees are recoverable by statute, they can be included in the amount-in-controversy calculation but must be apportioned amongst the individual consumers. And only each individual plaintiff's share can be considered as part of the amount in controversy. . . . But when, like here, a plaintiff "is suing under [the private attorney general provision of the CPPA] and is recovering no independent damages, the amount of attorneys' fees applicable to it for jurisdictional purposes are $0.

*Handsome Brook Farm Grp. 2, LLC*, 222 F. Supp. 3d at 78-79 (citations omitted) (quoting *Nat'l Consumers League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64, 73 (D.D.C. 2014) (Lamberth, J.)).

ExxonMobil does not acknowledge this precedent or attempt to establish that the jurisdictional minimum is met on a pro rata basis among members of the D.C. general public. Nor can the costs cited by ExxonMobil reasonably be construed to exceed the jurisdictional minimum on a pro rata basis. The costs cited by ExxonMobil are speculative, unreasonable, and/or entirely hypothetical, given what is available in a CPPA action and pleaded in Beyond Pesticides' Complaint.

As an initial matter, the civil damages contemplated by ExxonMobil as those that Beyond Pesticides "might seek" (Notice ¶ 22) are irrelevant to determining diversity jurisdiction here because Beyond Pesticides has never sought—and does not seek—damages in this action. (*See* Compl. Prayer); Wright & Miller, 14A Federal Practice and Procedure § 3702 ("Plaintiff is the master of his or her own claim; if plaintiff chooses to ask for less than the jurisdictional amount, only the sum actually demanded is in controversy."). Furthermore, ExxonMobil's calculations of the cost of complying with the injunction sought in this case either rely on the costliest, most inefficient means of complying with the injunction sought or grossly overstates the actual relief available.

ExxonMobil spends three paragraphs stating that if it undertook even a small increase in its investments in clean energy and environmentally friendly technology in order to comply with a finding that its "clean energy" marketing is misleading would cost substantially more than $75,000. (Notice ¶¶ 17-19). But the injunctive relief Beyond Pesticides seeks in the Complaint makes no mention, anywhere, of this purported relief. The Complaint alleges that ExxonMobil's advertising is misleading to D.C. consumers, which violates the CPPA, and asks the court for an injunction to stop this false advertising. In order to allege that the amount-in-controversy requirement is satisfied, ExxonMobil is imagining the costliest, most inefficient method by which it could stop misrepresenting its products and services—that is, by changing its core business and investment strategy, instead of merely ceasing to make the misrepresentations in its marketing. Measuring the cost-of-compliance metric for determining the amount-in-controversy in cases seeking injunctive relief puts the burden of "establishing the reasonableness" of the estimate on the party seeking removal. *Fahey v. Godiva Chocolatier, Inc.*, No. 19-2128 (JDB), 2020 U.S. Dist. LEXIS 27073, at *10-11 (D.D.C. Feb. 18, 2020) (granting remand where defendant's estimated cost-of-compliance was "speculative and unreasonable"); *see, e.g.*, *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 542-43 (3rd Cir. 1995) (finding cost-of-compliance estimate valid only where "[n]o feasible lower cost alternative to obtaining the injunction is presented."). ExxonMobil has not established, and cannot establish, that the cost of changing its core business and investment strategy, instead of changing its marketing, is a reasonable estimate of complying with the relief sought in this case.

Lastly, ExxonMobil briefly speculates about the cost of halting its false marketing and advertising on national television, stating that "overhauling ExxonMobil's existing advertising campaigns to meet Plaintiff's specifications would indisputably exceed $75,000" because its

expenditures on television advertising in 2019 totaled $24.9 million. (Notice at ¶ 16). Such vague and conclusory speculation is insufficient to meet ExxonMobil's burden of establishing the amount-in-controversy requirement. Not only does this estimate ignore the non-aggregation principle, but it does not break down the total television advertising cost in a way that would explain what portion of the total cost would reflect the cost of modifying or declining to run particular existing advertisements (as opposed to costs that would be incurred regardless of the relief sought in this case). Moreover, ExxonMobil's speculation overlooks that the reach of the CPPA is limited to the District of Columbia. Any injunction concerning ExxonMobil's marketing would only cover marketing performed in the District. ExxonMobil does not present any evidence that reflects the cost it would incur in complying with the sought injunction *within* the District. The total cost of running television advertising in *all* markets in a given year is irrelevant to determining the cost of compliance with a geographically limited injunction.

Because ExxonMobil's estimates are speculative, unreasonable, and do not take into account the non-aggregation principle, ExxonMobil cannot demonstrate the jurisdictional minimum to establish diversity jurisdiction.

## II.   The Class Action Fairness Act Does Not Provide Jurisdiction Because This is Not a "Class Action" as Defined by the Act.

Removal of Beyond Pesticides' claim on the basis that it is subject to federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), is fundamentally improper for a simple reason: this case is not a class action. Beyond Pesticides brings its claim under D.C. Code § 28-3905(k)(1)(D), a cause of action which does not function as a "class action" for purposes of D.C. Superior Court Rule 23 or CAFA. *See Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26, 35-36 (D.D.C. 2014) (Huvelle, J.) ("*Flowers Bakeries*") (removal of non-profit's action brought under D.C. Code § 28-3905(k)(1)(D) was not permitted

pursuant to CAFA because such an action is not a "class action" under D.C. Superior Court Rule 23).

Under CAFA, federal courts have original jurisdiction over any civil action "which is a class action" in which minimal diversity is satisfied, the number of putative class members is greater than one hundred, and the total amount in controversy as to all plaintiffs is greater than $5 million. 28 U.S.C. § 1332(d)(2). CAFA defines a "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id.* § 1332(d)(1)(B). "Absent the 'hallmarks of Rule 23 class actions; namely, adequacy of representation, numerosity, commonality, typicality, or the requirement of class certification,' courts have held that private attorney general statutes 'lack the equivalency to Rule 23 that CAFA demands.'" *Flowers Bakeries*, 36 F. Supp. 3d at 36 (quoting *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014) (holding that actions brought under the California Labor Code Private Attorneys General Act of 2004 are "not sufficiently similar to Rule 23 class actions to trigger CAFA jurisdiction")); *Hackman*, 2019 U.S. Dist. LEXIS 55635, at *11.

ExxonMobil states that "Beyond Pesticides purports to bring this action 'on behalf of the interests of a consumer or ***a class of consumers***, . . . seeking relief from the use by any person of a trade practice in violation of a law of the District . . . .'" (Notice at ¶ 27 (emphasis in original) (quoting Compl. ¶ 151)). On this basis, ExxonMobil concludes that Beyond Pesticides has "styl[ed] its action as a representative suit brought on behalf of a class of D.C. consumers, . . . cho[osing] to bring what is in substance a putative class action . . . ." (Notice at ¶ 28). What ExxonMobil neglects to mention is that Beyond Pesticides is simply quoting the statutory provision under which it brings its claim, D.C. Code § 28-3905(k)(1)(D), which provides:

> [A] public interest organization may, on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action under subparagraph (A) of this paragraph for relief from such use by such person of such trade practice.

*See generally* D.C. Code § 28-3901(a)(15) (defining "public interest organization"). Any suggestion that Beyond Pesticides has "styled" its complaint as a putative class action is therefore misleading. Furthermore, as the court in *Flowers Bakeries* explained, the usage of the word "class" in § 28-3905(k)(1)(D) does not "automatically permit removal under CAFA's class action provision." 36 F. Supp. 3d at 35-36; *see also Massachusetts v. Exxon Mobil Corp.*, No. 19-cv-12430, 2020 U.S. Dist. LEXIS 93153, at *36 (D. Mass. May 28, 2020) (remanding public attorney general action removed by ExxonMobil pursuant to CAFA, and rejecting ExxonMobil's reliance on Massachusetts Appeals Court decision stating that "an action brought by the Attorney General under [Mass. Gen. Laws ch. 93A, § 4], is comparable to a class action" (citation omitted)). What is relevant is whether actions under D.C. Code § 28-3905(k)(1)(D) "bear the hallmarks of Rule 23 class actions; namely, adequacy of representation, numerosity, commonality, typicality, or the requirement of class certification." *Flowers Bakeries*, 36 F. Supp. 3d at 36 (quoting *Baumann*, 747 F.3d at 1123). Because D.C. Code § 28-3905(k)(1)(D) "lack[s] the equivalency to Rule 23 that CAFA demands," removal of claims brought under it is not permitted under CAFA's class action provision. *Id.*

ExxonMobil relies solely on *Rotunda v. Marriot Int'l, Inc.*, 123 A.3d 980, 982 (D.C. 2015), to claim that "such suits under the CPPA" are "subject to the 'framework long established by' D.C. Superior Court Rule of Civil Procedure 23 . . . , which is in all relevant respects 'identical' . . . to Federal Rule of Civil Procedure 23." (Notice at ¶ 28). In *Rotunda*, the D.C. Court of Appeals considered whether an action brought by an individual on behalf of himself and the "general

public" under D.C. Code § 28-3905(k)(1)(B) seeking monetary damages was subject to the procedural framework established by D.C. Superior Court Rule of Civil Procedure 23. *See Rotunda*, 123 A.3d at 982; *see generally* D.C. Code § 28-3905(k)(1)(B) ("An individual may . . . on behalf of both the individual and the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District when that trade practice involves consumer goods or services that the individual purchased or received . . . ."). The Court held that it was, observing that there are "unique challenges to procedural fairness and administration posed by a representative suit for damages," and explaining that "Rule 23 has been a mainstay of Superior Court civil practice for decades, the time-tested framework within which suits for damages by class-members 'as representative parties,' Rule 23 (a), have been maintained." *Rotunda*, 123 A.3d at 988-89. To hold otherwise, the Court reasoned, would "force trial judges to make up new rules on an ad hoc basis in CPPA representative actions for damages," and it did not believe "the Council meant to displace the Rule 23 framework in favor of improvised due process and management devices for a whole sub-set of representative actions." *Id.* at 988-89 (internal quotation and citation omitted).

ExxonMobil's reliance on *Rotunda* is misplaced. Courts in this District have repeatedly emphasized, in remanding CPPA cases improperly removed on the basis of CAFA, that *Rotunda*'s holding does not extend to representative cases brought under D.C. Code § 28-3905(k)(1) that do not seek monetary damages. *See, e.g.*, *Hackman*, 2019 U.S. Dist. LEXIS 55635, at *11 ("The Court declines to apply *Rotunda* to this case, which would extend the District of Columbia Court of Appeals' limited holding. The *Rotunda* court repeatedly specified that its holding applied to DCCPPA cases requesting damages for the general public"); *Smith.*, 2017 U.S. Dist. LEXIS 135478, at *5 ("Abbott reads *Rotunda* too broadly. Although *Rotunda* held that DCCPPA

representative actions for money damages must comply with Rule 23, the decision was limited solely to suits for money damages and did not address representative actions for purely injunctive relief.") Thus, in *Animal Legal Def. Fund*, the court remanded a claim brought by a non-profit under § 28-3905(k)(1) seeking only injunctive relief, which had been removed by the defendant pursuant to CAFA, rejecting the defendant's reliance on *Rotunda*: "The concerns raised by the District of Columbia Court of Appeals in *Rotunda* related to suits for damages, not for the type of injunctive relief sought here, and that court *repeatedly* described its holding as limited to such suits." 249 F. Supp. 3d 53, 64-65 (emphasis in original). The court also rejected the defendant's argument "that the concerns that motivated the Court of Appeals are similarly applicable to suits for injunctive relief," explaining that "[w]hether or not this Court would deem it prudent for D.C. law to require DCCPPA suits for injunctive relief be considered class actions that must comply with Rule 23 is irrelevant. What is relevant is that the *Rotunda* opinion undeniably does *not* require that." *Id.* at 65 (internal quotation omitted, emphasis in original). Here, like the plaintiffs in each of these cases, Beyond Pesticides does not seek damages. (Compl. Prayer). The holding of *Rotunda* is therefore inapplicable, and federal jurisdiction over Beyond Pesticides' claim is not present under CAFA.

## III.   Plaintiff Is Entitled to Fees and Costs

"An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). This applies when, as here, the removing party lacks "an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005); *see also Stein v. American Exp. Travel Related Servs.,* 813 F. Supp. 2d 69, 74 (D.D.C. 2011) (Kessler, J.) (awarding fees and costs incurred by plaintiffs as result of removal in a CPPA case).

Over the past two years, courts in this District have held that the "the vast weight of authority in this Circuit" requires the amount-in-controversy to be determined on a pro rata basis in CPPA actions on behalf of the general public. *Hackman*, 2019 U.S. Dist. LEXIS 55635, at *18-19; *see also R.C. Bigelow, Inc.*, 314 F. Supp. 3d at 350-51 (holding that "the overwhelming weight of authority within th[is] District" requires application of the non-aggregation principle to injunctive relief on behalf of the general public). Indeed, for over a decade, courts in this District have consistently rejected the total cost of compliance theory relied upon by ExxonMobil. *See, e.g.*, *Animal Legal Def. Fund*, 249 F. Supp. 3d at 55; *Smith*, 2017 U.S. Dist. LEXIS 135478 at **3-4; *Handsome Brook Farm Grp. 2, LLC*, 222 F. Supp. 3d at 79; *Sloan v. Soul Circus, Inc.*, No. 15-01389, 2015 U.S. Dist. LEXIS 169565, at *15-34 (D.D.C. Dec. 18, 2015) (Contreras, J.); *Witte*, 104 F. Supp. 3d at 4-5; *Breakman*, 545 F. Supp. 2d at 107-08. Beyond Pesticides is unaware of a single decision from this Circuit that used the total cost of compliance as the amount-in-controversy in a CPPA action seeking purely injunctive relief on behalf of the general public. Given the clearly governing precedent in this District, Beyond Pesticides should be awarded just costs, including attorneys' fees, incurred as a result of ExxonMobil's improper removal.

Should the Court grant Plaintiff's request, Beyond Pesticides will file a motion for approval of its reasonable fees and costs.

## CONCLUSION

For all the foregoing reasons, Beyond Pesticides respectfully requests an order remanding this action to the Superior Court of the District of Columbia and awarding Beyond Pesticides its costs and fees incurred as a result of seeking remand following improper and objectively unreasonable removal.

DATED: August 5, 2020                         Respectfully submitted,

                                              **RICHMAN LAW GROUP**

                                              By:  */s/Kim E. Richman*
                                              Kim E. Richman (Bar No. 1022978)
                                              8 West 126th Street
                                              New York, New York 10027
                                              Telephone: (718) 878-4707
                                              Facsimile: (212) 687-8292
                                              krichman@richmanlawgroup.com

                                              *Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Kim E. Richman, hereby certify that on August 5, 2020, I caused a true and correct copy

of the foregoing document to be served on counsel of record for Defendants in the above-captioned

Action via ECF:

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP**

Patrick J. Conlon (Bar No. 414621)
patrick.j.conlon@exxonmobil.com
22777 Springwoods Village Parkway
Spring, TX 77389
Tel: (832) 624-6336

Theodore V. Wells, Jr. (Bar No. 468934)
Daniel J. Toal
twells@paulweiss.com
dtoal@paulweiss.com
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 373-3000

Justin Anderson (Bar No. 1030572)
janderson@paulweiss.com
2001 K Street, NW
Washington, DC 20006-1047
Tel: (202) 223-7300

*Attorneys for Defendant*

                                            */s/ Kim E. Richman*
                                            Kim E. Richman