**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BEYOND PESTICIDES,

      Plaintiff,

      v.

EXXON MOBIL CORPORATION,

      Defendant.

No. 1:20-cv-01815-TJK

**ORAL ARGUMENT REQUESTED**

**BRIEF OF DEFENDANT EXXON MOBIL CORPORATION**
**IN OPPOSITION TO PLAINTIFF BEYOND PESTICIDES'**
**MOTION TO REMAND AND FOR FEES AND COSTS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ..................................................................................................................... 6

I.     This Court Has Diversity Jurisdiction over This Action ................................... 6

       A.     The Amount in Controversy Is Satisfied Based on the Cost to ExxonMobil of
              Complying with Plaintiff's Prayer for Injunction ................................... 6

       B.     The "Non-Aggregation Principle" Does Not Require Disaggregation of the
              Amount in Controversy ........................................................................ 9

              1.     Plaintiff's "Common and Undivided" Claims Are Not Subject to
                     the Non-Aggregation Principle ................................................... 10

              2.     Applying the Non-Aggregation Principle Here Would Not Defeat
                     Diversity Jurisdiction ................................................................ 11

       C.     Attorneys' Fees Independently Satisfy the Amount in Controversy ........... 15

              1.     Plaintiff's Attorneys' Fees Will Certainly Exceed $75,000 ..................... 15

              2.     Attorneys' Fees Are Not Subject to Disaggregation ......................... 16

II.    This Court Has Jurisdiction under the Class Action Fairness Act ..................... 18

III.   Plaintiff Is Not Entitled to Attorneys' Fees or Costs ..................................... 26

CONCLUSION .................................................................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Addison Automatics, Inc.* v. *Hartford Cas. Ins. Co.*,
    731 F.3d 740 (7th Cir. 2014) ............................................................5, 19

*Aetna U.S. Healthcare, Inc.* v. *Hoechst Aktiengesellschaft*,
    48 F. Supp. 2d 37 (D.D.C. 1999) ....................................................10

*State* v. *Am. Petrol. Inst.*,
    Civ. No. 20-3837 (Minn. Dist. Ct. June 24, 2020) ...................................3

*Animal Legal Def. Fund* v. *Hormel Foods Corp.*,
    249 F. Supp. 3d 53 (D.D.C. 2017) ..........................................14, 16, 25

*Barnes* v. *Am. Tobacco Co.*,
    161 F.3d 127 (3d Cir. 1998)....................................................23, 24

*Bauer* v. *Marmara*,
    774 F.3d 1026 (D.C. Cir. 2014) ....................................................17

*Baumann* v. *Chase Investment Services Corp.*,
    747 F.3d 1117 (9th Cir. 2014) ....................................................22

*Board of County Commissioners of Boulder County* v. *Suncor Energy (U.S.A.), Inc.*,
    Civ. No. 18-30349 (Colo. Dist. Ct. Apr. 17, 2018) ...................................3

*Bradford* v. *George Wash. Univ.*,
    249 F. Supp. 3d 325 (D.D.C. 2017) ....................................................5

*Breakman* v. *AOL LLC*,
    545 F. Supp. 2d 96, 106 (D.D.C. 2008) ..........................................14, 16

*Breathe DC* v. *Santa Fe Nat. Tobacco Co.*,
    232 F. Supp. 3d 163 (D.D.C. 2017) ..........................................9, 14, 27

*State* v. *Chevron Corp.*,
    Civ. No. 18-4716 (R.I. Super. Ct. July 2, 2018) ....................................3

*City & County of Honolulu* v. *Sunoco LP*,
    Civ. No. 20-380 (Haw. Cir. Ct. Mar. 9, 2020)........................................3

*City of Imperial Beach* v. *Chevron Corp.*,
    Civ. 17-1227 (Cal. Super. Ct. July 17, 2017) ....................................3

ii

*City of New York* v. *BP p.l.c.*,
 Civ. No. 18-182 (S.D.N.Y. Jan. 9, 2018)..................................................................3

*City of Oakland* v. *BP p.l.c.*,
 Civ. No. 17-87588 (Cal. Super. Ct. Sept. 19, 2017) ...............................................3

*City of Richmond* v. *Chevron Corp.*,
 Civ. No. 18-55 (Cal. Super. Ct. Jan. 22, 2018)........................................................3

*City of San Francisco* v. *BP p.l.c.*,
 Civ. No. 17-561370 (Cal. Super. Ct. Sept. 19, 2017) ..............................................3

*City of San Francisco* v. *Exxon Mobil Corp.*,
 Civ. No. 18-106, 2020 WL 3969558 (Tex. App. June 18, 2020) .............................3

*City of Santa Cruz* v. *Chevron Corp.*,
 Civ. No. 17-3243 (Cal. Super. Ct. Dec. 20, 2017)...................................................3

*County of Marin* v. *Chevron Corp.*,
 Civ. No. 17-2586 (Cal. Super. Ct. July 17, 2017)....................................................3

*County of San Mateo* v. *Chevron Corp.*,
 Civ. No. 17-3222 (Cal. Super. Ct. July 17, 2017)....................................................3

*County of Santa Cruz* v. *Chevron Corp.*,
 Civ. No. 17-3242 (Cal. Super. Ct. Dec. 20, 2017)...................................................3

*Dart Cherokee Basin Operating Co.* v. *Owens*,
 574 U.S. 81 (2014).........................................................................................5, 8, 16

*Massachusetts* v. *Exxon Mobil Corp.*,
 Civ. No. 19-12430, 2020 U.S. Dist. LEXIS 93153 (D. Mass. May 28, 2020) ........21

*District of Columbia* v. *Exxon Mobil Corp.*,
 Civ. No. 20-2892 (D.C. Super. Ct. June 25, 2020)..................................................3

*Exxon Mobil Corp.* v. *Allapattah Servs., Inc.*,
 545 U.S. 546 (2005).............................................................................................5, 12

*People* v. *ExxonMobil Corp.*,
 Civ. No. 18-45044 (N.Y. Sup. Ct. Oct. 24, 2018) ...................................................3

*Commonwealth* v. *ExxonMobil Corp.*,
 Civ. No. 19-3333 (Mass. Super. Ct. Oct. 24, 2019) ................................................3

*Ford & Water Watch, Inc.* v. *Tyson Foods, Inc.*,
 Civ. No. 19-2811, 2020 WL 1065553 (D.D.C. Mar. 5, 2020)...........................14, 27

*GEO Specialty Chems., Inc.* v. *Husisian*,
    951 F. Supp. 2d 32 (D.D.C. 2013) ..........................................................................6

*Griffin* v. *Coastal Int'l Sec., Inc.*,
    Civ. No. 06-2246, 2007 WL 1601717 (D.D.C. June 4, 2007) ..................................7

*Hackman* v. *One Brands, LLC*,
    2019 WL 1440202 (D.D.C. 2019) ...........................................................14, 18, 25

*Hunt* v. *Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977)..................................................................................................6

*Inst. for Truth in Mktg.* v. *Total Health Network Corp.*,
    321 F. Supp. 3d 76 (D.D.C. 2018) ..........................................................................14

*Katz* v. *Warner-Lambert Co.*,
    9 F. Supp. 2d 363 (S.D.N.Y. 1998) ...................................................................12, 15

*King County* v. *BP p.l.c.*,
    Civ. No. 18-11859 (Wash. Super. Ct. May 9, 2018) .................................................3

*Knop* v. *Mackall*,
    645 F.3d 381 (D.C. Cir. 2011) ...........................................................................26, 27

*Lightfoot* v. *District of Columbia*,
    273 F.R.D. 314 (D.D.C. 2011)................................................................................24

*Lincoln Prop. Co.* v. *Roche*,
    546 U.S. 81 (2005)..............................................................................................5, 6

*Lovell* v. *State Farm Mut. Auto. Ins. Co.*,
    466 F.3d 893 (10th Cir. 2006) .......................................................................12, 14, 15

*Martin* v. *Franklin Cap. Corp.*,
    546 U.S. 132 (2005)..............................................................................................26

*Mayor & City Counsel of Baltimore* v. *BP p.l.c.*,
    Civ. No. 18-4219 (Md. Cir. Ct. July 20, 2018).........................................................3

*McMullen* v. *Synchrony Bank*,
    82 F. Supp. 3d 133 (D.D.C. 2015).........................................................................19

*In re Microsoft Corp. Antitrust Litig.*,
    127 F. Supp. 2d 702 (D. Md. 2001).............................................................12, 13, 15

*Nat'l Welfare Rights Org.* v. *Weinberger*,
    377 F. Supp. 861 (D.D.C. 1974)...............................................................10, 11, 27

*National Consumers League* v. *Flowers Bakeries, LLC*,
   36 F. Supp. 3d 26 (D.D.C. 2014) ........................................................25

*Organic Consumers Ass'n* v. *Hain Celestial Grp., Inc.*,
   285 F. Supp. 3d 100 (D.D.C. 2018) ..............................................12, 27

*Organic Consumers Ass'n* v. *Handsome Brook Farm Grp. 2, LLC*,
   222 F. Supp. 3d 74 (D.D.C. 2016) ......................................................15

*Organic Consumers Ass'n* v. *R.C. Bigelow*,
   314 F. Supp. 3d 344 (D.D.C. 2018) ..............................................14, 27

*Parker-Williams* v. *Charles Tini & Assocs., Inc.*,
   53 F. Supp. 3d 149 (D.D.C. 2014) ......................................................15

*Rotunda* v. *Marriott International, Inc.*,
   123 A.3d 980 (D.C. 2015) ........................................................ *passim*

*Smith* v. *Abbott Labs*,
   Civ. No. 16-501, 2017 U.S. Dist. LEXIS 135478 (D.D.C. Mar. 31, 2017) ......................15, 25

*Smith* v. *Washington*,
   593 F.2d 1097 (D.C. Cir. 1978) ............................................................6

*Snyder* v. *Harris*,
   394 U.S. 332 (1969) ............................................................9, 10, 16

*Snyder* v. *Harris*,
   394 U.S. 332 (1969) ............................................................14

*Song* v. *Charter Commc'ns Inc.*,
   Civ. No. 17-325, 2017 WL 1149286 (S.D. Cal. Mar. 28, 2017) ..................................5, 19, 27

*St. Paul Mercury Indem. Co.* v. *Red Cab Co.*,
   303 U.S. 283 (1938) ............................................................7

*Stein* v. *American Express Travel Related Services*,
   813 F. Supp. 2d 69 (D.D.C. 2011) ......................................................27

*Synfuel Techs., Inc.*, v. *DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ........................................................ *passim*

*Tatum* v. *Laird*,
   444 F.2d 947 (D.C. Cir. 1971), *rev'd on other grounds*, 408 U.S. 1 (1972) ......................6, 12

*Taylor* v. *Sturgell*,
   553 U.S. 880 (2008) ............................................................24

*Wal-Mart Stores, Inc.* v. *Dukes*,
    564 U.S. 338 (2011) ................................................................................................23

*Williams* v. *Purdue Pharma Co.*,
    Civ. No. 02-0556, 2003 WL 24259557 (D.D.C. Feb. 27, 2003) .............................11

*Witte* v. *Gen. Nutrition Corp.*,
    104 F. Supp. 3d 1 (D.D.C. 2015) ...........................................................................14

*Zuckman* v. *Monster Beverage Corp.*,
    958 F. Supp. 2d 293 (D.D.C. 2013) ...................................................................17, 18

## STATUTES

28 U.S.C. § 1332(a) ...............................................................................................6, 9

28 U.S.C. § 1332(c)(1) ................................................................................................6

28 U.S.C. § 1332(d)(1)(B) .........................................................................................18

28 U.S.C. § 1332(d)(2) ..............................................................................................18

28 U.S.C. § 1332(d)(6) ..............................................................................................18

28 U.S.C. § 1367 .........................................................................................................5

28 U.S.C. § 1441(a) .....................................................................................................5

28 U.S.C. § 1453(b) .....................................................................................................5

28 U.S.C. § 1447(c) ...................................................................................................26

Class Action Fairness Act, 28 U.S.C. § 1332(d) .................................................. *passim*

D.C. Code §§ 28-3904 ........................................................................................ *passim*

D.C. Code § 28-3905(k)(1)(D) ............................................................................ *passim*

D.C. Code § 28-3905(k)(1)(D)(i) ...............................................................................23

D.C. Code § 28-3905(k)(2)(B) ...................................................................................15

## OTHER AUTHORITIES

1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 1.1 (4th ed.
    2002) ......................................................................................................................20

*Beyond Pesticides Lawsuit Challenges Exxon for Deceptive Claims of Significant Investments in Solving the Climate Crisis, Cites Petrochemical Pesticides*, Beyond Pesticides (May 18, 2020) ...................................................................1

14B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3702.1 (4th ed. 2020) .................................................................................7

D.C. Superior Court Rule 23............................................................ *passim*

D.C. Superior Court Rule 23(a) ..................................................................23

D.C. Superior Court Rule 23(b)(2) .............................................................23

D.C. Superior Court Rule 23(d) ..................................................................23

Federal Rule of Civil Procedure 23 .................................................. *passim*

Fed. R. Civ. P. 23(a)(4)................................................................................20

Fed. R. Civ. P. 23(d)(1)...............................................................................23

S. Rep. No. 109-14 (2005) ...................................................................19, 21

## INTRODUCTION

Plaintiff Beyond Pesticides brought this action against Exxon Mobil Corporation ("ExxonMobil") to address the allegedly "[d]ramatic changes to the Earth's climate" caused by greenhouse gas emissions. Compl. ¶ 1. Through this lawsuit, Plaintiff aims to achieve "real solutions to the climate crisis" by curtailing "ExxonMobil's business."[1] As is widely known, ExxonMobil's business "continues to be in the production and use of petroleum, natural gas, and petrochemicals."[2]

In pursuit of these policy objectives, Plaintiff asserts claims against ExxonMobil under the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3904 *et seq.*, based on truthful public statements about ExxonMobil's investments in alternative energy. Compl. ¶ 144. Plaintiff does not contend that ExxonMobil's disclosures about these investments are inaccurate. Instead, it alleges ExxonMobil's advertisements are misleading merely because the "size of its investments" in alternative energy is "small . . . relative to the overall size of ExxonMobil's business." *Id.* ¶ 13. As a remedy, Plaintiff requests an injunction "halt[ing] ExxonMobil's false marketing and advertising," *id.* ¶¶ 16, 119, as well as costs, attorneys' fees, and declaratory relief, *id.* at 26 (Prayer for Relief).

---

[1] *Beyond Pesticides Lawsuit Challenges Exxon for Deceptive Claims of Significant Investments in Solving the Climate Crisis, Cites Petrochemical Pesticides*, Beyond Pesticides (May 18, 2020), https://beyondpesticides.org/dailynewsblog/2020/05/lawsuit-challenges-exxon-for-deceptive-claims-of-significant-investments-in-solving-the-climate-crisis/.

[2] *Id.*

Federal subject matter jurisdiction should be exercised over this action for at least two reasons.[3]

*First*, diversity jurisdiction is satisfied because the parties are citizens of different states, and the amount-in-controversy exceeds $75,000, whether based on the cost to ExxonMobil of complying with Plaintiff's requested injunctive relief or the attorneys' fees Plaintiff seeks. Plaintiff endeavors to reduce the amount-in-controversy by arguing that it should be divided *pro rata* among the class of District of Columbia consumers on whose behalf it purports to sue. But the non-aggregation principle on which Plaintiff relies is either inapplicable or satisfied where, as here, ExxonMobil's costs of complying with the requested injunction would be unaffected by the number of plaintiffs seeking relief. Disaggregation is also unwarranted for attorneys' fees at least where, as here, they are sought only for Plaintiff's benefit. Both ExxonMobil's cost of compliance and the recovery of attorneys' fees provide independently sufficient bases to assert diversity jurisdiction.

*Second*, this Court may exercise jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because Plaintiff purports to sue on behalf of a class of District of Columbia consumers, utilizing a private attorney general provision of the CPPA. This action is a "class action" under CAFA because it is "in substance" a class action. Plaintiff has already conceded as much by invoking the non-aggregation principle in its opening brief. Plaintiff cannot invoke the size of the class it purports to represent as a basis for defeating diversity jurisdiction, only to claim in the next breath that it does not represent a class at all when arguing against CAFA jurisdiction. Further, assuming CAFA requires that an action be subject to procedures equivalent

---

[3] By filing this brief in opposition to Plaintiff's motion to remand, ExxonMobil does not waive any right, defense, affirmative defense, or objection, including any challenges to personal jurisdiction over ExxonMobil.

to Federal Rule of Civil Procedure 23, that requirement is also satisfied here.  The District of Columbia Court of Appeals has recently held that CPPA private attorney general actions like Plaintiff's are governed by D.C. Superior Court Rule 23, which is identical to Federal Rule 23. The purportedly contrary case law on which Plaintiff relies either predates the Court of Appeals' decision, or involves private attorney general provisions not at issue here.  Whether under diversity or CAFA, federal jurisdiction is proper here.

## BACKGROUND

In recent years, climate activists have colluded with like-minded state and local officials to file a barrage of tort suits against ExxonMobil and other energy companies.[4]  Although the fora and causes of action have varied, the goals of these suits have been consistent: to "chill and suppress" the speech of ExxonMobil and other energy companies on climate and energy policy, *City of San Francisco* v. *Exxon Mobil Corp.*, Civ. No. 18-106, 2020 WL 3969558, at *8 (Tex. App. June 18, 2020) (quoting trial court's findings of fact and conclusions of law), and to obtain

---

[4] *See City of New York* v. *BP p.l.c.*, Civ. No. 18-182 (S.D.N.Y. Jan. 9, 2018); *District of Columbia* v. *Exxon Mobil Corp.*, Civ. No. 20-2892 (D.C. Super. Ct. June 25, 2020); *State* v. *Am. Petrol. Inst.*, Civ. No. 20-3837 (Minn. Dist. Ct. June 24, 2020); *City & County of Honolulu* v. *Sunoco LP*, Civ. No. 20-380 (Haw. Cir. Ct. Mar. 9, 2020); *Commonwealth* v. *ExxonMobil Corp.*, Civ. No. 19-3333 (Mass. Super. Ct. Oct. 24, 2019); *People* v. *ExxonMobil Corp.*, Civ. No. 18-45044 (N.Y. Sup. Ct. Oct. 24, 2018); *Mayor & City Counsel of Baltimore* v. *BP p.l.c.*, Civ. No. 18-4219 (Md. Cir. Ct. July 20, 2018); *State* v. *Chevron Corp.*, Civ. No. 18-4716 (R.I. Super. Ct. July 2, 2018); *King County* v. *BP p.l.c.*, Civ. No. 18-11859 (Wash. Super. Ct. May 9, 2018); *Board of County Commissioners of Boulder County* v. *Suncor Energy (U.S.A.), Inc.*, Civ. No. 18-30349 (Colo. Dist. Ct. Apr. 17, 2018); *City of Richmond* v. *Chevron Corp.*, Civ. No. 18-55 (Cal. Super. Ct. Jan. 22, 2018); *City of Santa Cruz* v. *Chevron Corp.*, Civ. No. 17-3243 (Cal. Super. Ct. Dec. 20, 2017); *County of Santa Cruz* v. *Chevron Corp.*, Civ. No. 17-3242 (Cal. Super. Ct. Dec. 20, 2017); *City of Oakland* v. *BP p.l.c.*, Civ. No. 17-87588 (Cal. Super. Ct. Sept. 19, 2017); *City of San Francisco* v. *BP p.l.c.*, Civ. No. 17-561370 (Cal. Super. Ct. Sept. 19, 2017); *City of Imperial Beach* v. *Chevron Corp.*, Civ. 17-1227 (Cal. Super. Ct. July 17, 2017); *County of Marin* v. *Chevron Corp.*, Civ. No. 17-2586 (Cal. Super. Ct. July 17, 2017); *County of San Mateo* v. *Chevron Corp.*, Civ. No. 17-3222 (Cal. Super. Ct. July 17, 2017).

legal remedies that would coerce ExxonMobil and other energy companies to abandon the fossil fuel business.

This lawsuit, brought by a Washington, D.C. advocacy organization, is no different. Plaintiff acknowledges that this action purports to address the "concern[s]" of the "citizens of the District of Columbia and the country" about the "[d]ramatic changes to the Earth's climate." Compl. ¶ 1.  In its press release announcing this action, Plaintiff described the litigation as a means to achieve "real solutions to the climate crisis."[5]  The tool of choice here is the CPPA, which Plaintiffs deploy in an attempt to prevent ExxonMobil from issuing allegedly "false marketing and advertising," *id.* ¶ 12, that not even Plaintiff claims are actually false.

Plaintiff alleges that ExxonMobil has violated the CPPA through public statements about its alternative energy investments.  Plaintiff acknowledges that ExxonMobil "invest[s] resources into clean, renewable, and less environmentally impactful forms of energy" totaling "$1 billion per year" and "$9 billion since 2000."  *Id.* ¶¶ 7, 45.  But Plaintiff says ExxonMobil has not done enough.  According to Plaintiff, it is misleading, and thus in violation of the CPPA, for ExxonMobil to make accurate disclosures about its investments in alternative energy because the investments ExxonMobil makes are, from Plaintiff's perspective, not a sufficiently "significant proportion of its overall business," which includes capital expenditures in conventional energy of approximately $465 billion since 2000.  *Id.* ¶¶ 10, 52.  Plaintiff complains that ExxonMobil's "investment in renewable energy and [carbon capture and storage] are dwarfed by its core business of traditional fossil fuel production."  *Id.* ¶ 44.  In Plaintiff's telling, to comply with the CPPA's proscription on misleading statements, ExxonMobil must cease making accurate, truthful disclosures about the investments it has made, and must design, develop, and issue new

---

[5] *Supra* note 1.

advertisements that detail ExxonMobil's investments in "traditional fossil fuel production" instead. *Id.*

## LEGAL STANDARD

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Federal district courts have "original," diversity jurisdiction over suits between "citizens of different States" where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." *Id.* § 1332(a); *Lincoln Prop. Co.* v. *Roche*, 546 U.S. 81, 89 (2005). CAFA separately vests federal courts with jurisdiction over "class action[s]" for which minimal diversity exists, at least 100 class members are represented, and the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d); *Bradford* v. *George Wash. Univ.*, 249 F. Supp. 3d 325, 332 (D.D.C. 2017); *see also* 28 U.S.C. § 1453(b). Because an action need only be a class action "in substance" to permit removal, a plaintiff cannot escape CAFA by "attempt[ing] to disguise the true nature of [its] suit." *Addison Automatics, Inc.* v. *Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2014); *see Song* v. *Charter Commc'ns Inc.*, Civ. No. 17-325, 2017 WL 1149286, at *1 n.1 (S.D. Cal. Mar. 28, 2017). So long as a single plaintiff's claim satisfies the jurisdictional amount in controversy, a federal court may exercise supplemental jurisdiction over related claims by plaintiffs that do not meet the requirement. *Exxon Mobil Corp.* v. *Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005); *see* 28 U.S.C. § 1367.

Where a defendant premises removal on diversity or CAFA jurisdiction, its notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co.* v. *Owens*, 574 U.S. 81, 89 (2014). Only "[i]f the plaintiff contests the defendant's allegation" must "both sides submit proof and the

court decide[], by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88.

## ARGUMENT

**I.      This Court Has Diversity Jurisdiction over This Action**

Federal courts are vested with diversity jurisdiction over civil actions for which (1) there is "complete diversity," meaning that no plaintiff is a citizen of the same State as any defendant; and (2) the amount in controversy "exceeds the sum or value of $75,000."  28 U.S.C. § 1332(a); *Lincoln Prop. Co.*, 546 U.S. at 89.  Both criteria are satisfied here.  *First*, complete diversity is undisputed, as Beyond Pesticides is a citizen of the District of Columbia, and ExxonMobil is a citizen of New Jersey and Texas.  *See* Notice of Removal ("Notice") ¶¶ 11-12; 28 U.S.C. § 1332(c)(1).  *Second*, the amount in controversy—the cost to ExxonMobil of complying with the injunctive relief Plaintiff seeks and/or a potential attorneys' fee award under the CPPA—exceeds the $75,000 jurisdictional threshold.

**A.      The Amount in Controversy Is Satisfied Based on the Cost to ExxonMobil of Complying with Plaintiff's Prayer for Injunction**

For diversity jurisdiction to lie, the amount in controversy must "exceed[] the sum or value of $75,000."  28 U.S.C. § 1332(a).  Where a plaintiff seeks injunctive relief, the amount in controversy is "the value of the object of the litigation," *Hunt* v. *Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977), which "may be measured by either the value of the right sought to be gained by the plaintiff . . . or the cost of enforcing that right to the defendant," *Tatum* v. *Laird*, 444 F.2d 947, 951 (D.C. Cir. 1971), *rev'd on other grounds*, 408 U.S. 1 (1972); *accord Smith* v. *Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978).  Thus, "[t]he value of injunctive relief for determining the amount in controversy can be calculated as the cost to the defendant."  *GEO Specialty Chems., Inc.* v. *Husisian*, 951 F. Supp. 2d 32, 39 (D.D.C. 2013).

Here, Plaintiff seeks "relief including an injunction to halt ExxonMobil's [allegedly] false and deceptive marketing and advertising." Compl. ¶ 16. Complying with this relief would cost ExxonMobil well over $75,000, both because of the wide range of "marketing and advertising" Plaintiff targets and the corresponding expense necessarily involved in overhauling those advertising campaigns.

The Complaint challenges no fewer than fifteen allegedly objectionable statements contained in ExxonMobil's advertisements over a variety of media—print, television, and online. *See, e.g.*, Compl. ¶¶ 21; 23; 25-41. Assuming these statements are actionable under the CPPA— which they are not[6]—"halt[ing] ExxonMobil's false marketing and advertising" would require overhauling ExxonMobil's various advertising campaigns to satisfy Plaintiff's specifications. *Id.* ¶ 16. To take one example, Plaintiff's contemplated injunction would require ExxonMobil to undertake the effort of removing from circulation its television advertisement comparing ExxonMobil's carbon capture storage technology to photosynthesis—an advertisement that has generated over 1.8 billion impressions—reshooting the advertisement to state that "ExxonMobil is still primarily producing traditional fossil fuels," *see id.* ¶¶ 38-40, and recirculating the revised advertisement. More generally, complying with Plaintiff's requested injunctive relief would require ExxonMobil to expend significant sums on, among other things, recalling existing television, radio, print, and digital advertisements; replacing such advertisements that have not yet

---

[6] ExxonMobil does not concede—and in fact denies—that Plaintiff is entitled to any of the relief it seeks. A plaintiff's claim, whether "well or ill-founded in fact," "fixes the right of the defendant to remove." *St. Paul Mercury Indem. Co.* v. *Red Cab Co.*, 303 U.S. 283, 294 (1938); *accord Griffin* v. *Coastal Int'l Sec., Inc.*, Civ. No. 06-2246, 2007 WL 1601717, at *2 (D.D.C. June 4, 2007); *see also* 14B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3702.1 (4th ed. 2020) ("[A] defendant who seeks to prove that the amount in controversy is greater than the jurisdictional amount does not automatically concede that the jurisdictional amount is recoverable.").

run; researching and developing alternative advertising campaigns; undertaking consumer marketing research in connection with any new advertising campaigns; and redesigning its websites and consumer engagement materials. Overhauling its advertising campaigns in this way would easily exceed the jurisdictional threshold.

Between 2014 and 2019, ExxonMobil's average annual advertising budget for the United States market was $229.5 million.[7]   *See* Declaration of Alan Jeffers ("Jeffers Decl.") ¶ 4. Therefore, replacing a mere 0.0328% of ExxonMobil's advertising likely would cost more than $75,000, and replacing 2.18% likely would cost more than $5 million. Given the broad scope of Plaintiff's requested relief, the preponderance of the evidence demonstrates that the amount-in-controversy requirement is satisfied.[8]   *See Dart Cherokee*, 574 U.S. at 87-88.

Plaintiff's efforts to resist this conclusion are unavailing. *First*, Plaintiff attempts to impose on ExxonMobil the heightened burden of "break[ing] down the total television advertising cost in a way that would explain what portion of the total cost would reflect the cost of modifying or declining to run particular existing advertisements." *See* Br. 7. Plaintiff offers no support for requiring such a granular cost estimate. On the contrary, courts have declined to demand precision

---

[7] Specifically, ExxonMobil expended $375 million in 2019, $374.8 million in 2018, $233 million in 2017, $151 million in 2016, $110 million in 2015, and $133 million in 2014. Jeffers Decl. ¶ 4.

[8] Insofar as Plaintiff seeks "injunctive relief putting an end to ExxonMobil's deceptive and unfair business practices" by altering ExxonMobil's business practices (and not merely its advertisements), Compl. ¶ 119, the amount in controversy is even higher. According to the Complaint, ExxonMobil committed "deceptive and unfair business practices" by "represent[ing] that it engages in cleaner forms of energy at a significant level, when in fact, its *core business* remains entrenched in the production and delivery of fossil fuels." *Id.* ¶ 140 (emphasis added). Assuming these practices were actionable under the CPPA—which they are not, *see supra* note 6—"putting an end to" them would require ExxonMobil to substantially increase its investments in renewable energy. *See* Compl. ¶ 140. For example, Plaintiff alleges that ExxonMobil's capital expenditures since 2000 "total well over $465 billion." *Id.* ¶ 52. Therefore, reallocating a mere 5% of those expenditures toward "cleaner forms of energy" would have cost $23.25 billion.

or specificity in estimating injunctive compliance costs.  *See Breathe DC* v. *Santa Fe Nat. Tobacco Co.*, 232 F. Supp. 3d 163, 170 (D.D.C. 2017) ("Although DePalma's estimates could be more precise, the costs need not be proven to a legal certainty. . . .  DePalma's estimates are based on his experience and *relevant expenditures of businesses in the past*." (emphasis added)).  Plaintiff's argument also misses the point.  To comply with the injunction, ExxonMobil would need to recall advertising that it currently runs prior to the planned end of that advertising campaign.  It would then need to develop new advertising campaigns solely as a consequence of this litigation.  Those costs in their entirety would be attributable to the relief Plaintiff seeks here.

*Second*, Plaintiff contends that ExxonMobil must distinguish "the cost it would incur in complying with the sought injunction *within* the District [of Columbia]" from the cost across "all markets in a given year."  Br. 7 (emphasis omitted).  But because "*[n]one* of ExxonMobil's advertising is prepared specifically for the District of Columbia," Jeffers Decl. ¶ 5 (emphasis added), there is no such distinction to be made.  Put differently, modifying its advertisements within the District of Columbia to comply with Plaintiff's requested relief would require modifying ExxonMobil's nationwide advertising.

### B.  The "Non-Aggregation Principle" Does Not Require Disaggregation of the Amount in Controversy

Plaintiff attempts to artificially deflate the amount in controversy below the statutory minimum by urging application of the "non-aggregation principle."  *See* Br. 2-4.  The non-aggregation principle derives from "the statutory phrase 'matter in controversy'" within Section 1332(a).  *Snyder* v. *Harris*, 394 U.S. 332, 336 (1969).  Under this principle, "the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement," except for "cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest."  *Id.* at 335.  Put differently, in

calculating the amount in controversy, "the court cannot just add up the damages sought by each member of the class; rather, at least one named plaintiff must satisfy the jurisdictional minimum." *Synfuel Techs., Inc.*, v. *DHL Express (USA), Inc.*, 463 F.3d 646, 651 (7th Cir. 2006) (formatting altered).

According to Plaintiff, the non-aggregation principle demands that the costs to ExxonMobil be allocated on a *pro rata* basis among the individuals on whose behalf Plaintiff purportedly sues: a class of District of Columbia consumers.  Br. 3.  That is incorrect, for two reasons.  *First*, the non-aggregation principle is inapplicable where, as here, the claims asserted are "common and undivided."  *Second*, this principle, even if applicable here, is satisfied because the costs at issue are unaffected by the number of plaintiffs asserting claims.

### 1. Plaintiff's "Common and Undivided" Claims Are Not Subject to the Non-Aggregation Principle

The non-aggregation principle is subject to an important exception—it does not apply where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest."  *Snyder*, 394 U.S. at 335.  In evaluating this exception's applicability, courts within this District have applied the "interest distribution test": "[A] common and undivided claim exists when the adversary of the class has no interest in how the claim is to be distributed among the class members."  *Nat'l Welfare Rights Org.* v. *Weinberger*, 377 F. Supp. 861, 866 (D.D.C. 1974) (citing *Bass* v. *Rockefeller*, 331 F. Supp. 945, 950 (S.D.N.Y. 1971), *vacated on other grounds*, 464 F.2d 1300 (2d Cir. 1971)); *accord Aetna U.S. Healthcare, Inc.* v. *Hoechst Aktiengesellschaft*, 48 F. Supp. 2d 37, 41 (D.D.C. 1999).  Thus, for example, claims for profit disgorgement, unlike claims for damages, are "common and undivided" because "the amount of th[e] recovery would not be affected by the number of plaintiffs, nor the values of their individual

claims." *Williams* v. *Purdue Pharma Co.*, Civ. No. 02-0556, 2003 WL 24259557, at *5 (D.D.C. Feb. 27, 2003).

Plaintiff's claims meet the "interest distribution" test.  As with profit disgorgement, the cost ExxonMobil must expend on complying with Plaintiff's requested injunctive relief will "not be affected by the number of plaintiffs, nor the values of their individual claims."  *Id.*  The relief that Plaintiff seeks—modification of ExxonMobil's advertising—cannot be distributed on a *pro rata* basis among a class of District of Columbia consumers.  Like profit disgorgement, overhauling ExxonMobil's advertising campaigns is an all-or-nothing proposition that would not impose greater costs on ExxonMobil as the number of plaintiffs increases or provide financial relief to ExxonMobil as the number of plaintiffs is reduced. Therefore, the relative benefit to individual consumers of ExxonMobil's compliance with Plaintiff's requested relief is of "no interest" to ExxonMobil, rendering the non-aggregation principle inapplicable.  *Weinberger*, 377 F. Supp. at 866.

### 2. Applying the Non-Aggregation Principle Here Would Not Defeat Diversity Jurisdiction

Even assuming Section 1332(a)'s non-aggregation principle applies to the injunctive relief at issue here, it would not cause the amount in controversy to fall beneath $75,000.  The "relevant test" for compliance with this principle is whether "the cost to each defendant of an injunction running in favor of one plaintiff" exceeds $75,000.  *Synfuel*, 463 F.3d at 652 (quoting *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 610 (7th Cir. 1997), *abrogated on other grounds by Rivet* v. *Regions Bank of La.*, 522 U.S. 470 (1998)).  The "key" question is whether a defendant could comply with the requested injunctive relief "for an individual [plaintiff]—in which case the value of the injunction to each individual class member is quantifiable and presumably quite small—or if it could comply with the proposed injunction only by undertaking

a systemic change . . . , a change that would cost the same whether it was made for just one [plaintiff] or every [plaintiff]." *Id.*   In the former case, the amount in controversy must be disaggregated, because the defendant's cost is the sum of the costs of addressing the claims of the individual plaintiffs.

But in the latter case, where the defendant would incur costs in excess of $75,000 regardless of the number of plaintiffs asserting claims, disaggregation is unwarranted because aggregation of plaintiffs' claims is unnecessary to reach the amount in controversy in the first instance. *See, e.g.*, *Lovell* v. *State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 898 (10th Cir. 2006); *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d 702, 719 (D. Md. 2001); *Katz* v. *Warner-Lambert Co.*, 9 F. Supp. 2d 363, 364-65 (S.D.N.Y. 1998).   In other words, where a defendant's compliance costs are unaffected by the number of claimants, every plaintiff after the first adds nothing to the defendant's costs.   In that case, the court may exercise diversity jurisdiction over the first plaintiff's claim, and supplemental jurisdiction over the related claims of the other plaintiffs whose claims contribute less than $75,000 (or, here, $0) to the amount in controversy.   *See Exxon Mobil*, 545 U.S. at 549.

*Synfuel* illustrates this principle in action.   There, plaintiffs sued a package delivery service, alleging that its method for weighing packages and billing customers amounted to an impermissible contractual penalty.   *See* 463 F.3d at 648-49.   The remedies plaintiffs sought included an injunction requiring defendant to "make changes to its billing practices."   *Id.* at 648. Concluding that defendant could satisfy this relief "only by undertaking a systemic change of its weighing and billing procedures, a change that would cost the same whether it was made for just one customer or every customer served by the company," the court concluded that the action met the amount in controversy requirement.   *Id.* at 652; *see also Organic Consumers Ass'n* v. *Hain Celestial Grp., Inc.*, 285 F. Supp. 3d 100, 102 n.2 (D.D.C. 2018); *cf. Tatum*, 444 F.2d at 955 ("[I]t

seems likely that if all the relief sought by [plaintiffs] were granted, including enjoining the operation of the Army's civilian intelligence system . . ., the cost to the Army of complying with such a decree might well exceed" the jurisdictional threshold.).

So it is here.   Plaintiff demands "systemic change[s]": a dramatic overhaul of ExxonMobil's advertising efforts that "would cost [ExxonMobil] the same whether it was made for just one customer or every customer served by the company." *Synfuel*, 463 F.3d at 652.  The size of the class of District of Columbia consumers on whose behalf Plaintiff sues will have *no effect* on the cost to ExxonMobil of pulling existing television commercials that Plaintiff deems offensive, engaging in market research, or reshooting television commercials to comply with Plaintiff's specifications.   Indeed, because "[n]one of ExxonMobil's advertising is prepared specifically for the District of Columbia," Jeffers Decl. ¶ 5, the cost to ExxonMobil of overhauling any aspect of its advertising campaign cannot be traced to any individual consumer in the District of Columbia.   Accordingly, "the cost to [ExxonMobil] of an injunction running in favor of one plaintiff" exceeds $75,000.[9]  *Synfuel*, 463 F.3d at 652.

Plaintiff does not quibble with the proposition that ExxonMobil's costs are unaffected by the number of persons on whose behalf its suit is brought.  Instead, Plaintiff offers a laundry list of cases in which district courts have held that, for CPPA private attorney general claims, the amount in controversy must nonetheless be divided *pro rata* among the consumers that would

---

[9] That the "common and undivided" interest exception is satisfied for the same reason is no accident.  Where, as here, "an injunction in favor of a single plaintiff—compliance with which would cost the defendant in excess of the jurisdictional amount—would provide the same benefit to all other plaintiffs," application of the non-aggregation principle will necessarily yield a result "consonant with the purpose of the common and undivided interest exception." *In re Microsoft Corp.*, 127 F. Supp. 2d at 719 n.16.

benefit from the requested injunctive relief.  *See* Br. 3-4.  Those decisions, however, are either

distinguishable or unpersuasive—and none are binding on this Court.

   *First*, in one case Plaintiff cites, the defendant relied on "sheer speculation" to estimate the

costs it would incur in complying with plaintiff's requested injunctive relief.  *See Inst. for Truth*

*in Mktg.* v. *Total Health Network Corp.*, 321 F. Supp. 3d 76, 89 (D.D.C. 2018) ("Total Health has

offered no evidence to support its contention that it would cost $25,000 to comply with the

injunctive relief that [plaintiff] seeks.").  Whether the defendant's cost could be disaggregated,

therefore, was a moot point.

   *Second*, in another case, the defendant estimated its compliance costs, but then conceded

that those costs could be traced to individual consumers on whose behalf the suit was brought.  For

example, in *Breakman* v. *AOL LLC*, the court held that, "*based on AOL's own calculations*, the

cost running to each District of Columbia consumer is $8.99, an amount far below the jurisdictional

requirement."  545 F. Supp. 2d 96, 106 (D.D.C. 2008) (emphasis added).

   *Third*, in most of the other cases, courts held that disaggregation was necessary because

"considering a defendant's total compliance costs" would "circumvent the non-aggregation

principle articulated by the Supreme Court in *Snyder* v. *Harris*."  *Ford & Water Watch, Inc.* v.

*Tyson Foods, Inc.*, Civ. No. 19-2811, 2020 WL 1065553, at *4 (D.D.C. Mar. 5, 2020); *accord*

*Hackman* v. *One Brands, LLC*, 2019 WL 1440202, at *5-6 (D.D.C. 2019); *Organic Consumers*

*Ass'n* v. *R.C. Bigelow*, 314 F. Supp. 3d 344, 350 (D.D.C. 2018); *Animal Legal Def. Fund* v. *Hormel*

*Foods Corp.*, 249 F. Supp. 3d 53, 60 (D.D.C. 2017); *Breathe DC*, 232 F. Supp. 3d at 171; *Witte* v.

*Gen. Nutrition Corp.*, 104 F. Supp. 3d 1, 6 (D.D.C. 2015).  Yet those decisions should not control

here.  As *Synfuel* demonstrates, no aggregation occurs where each plaintiff after the first

contributes nothing to the defendant's costs.  *See* 463 F.3d at 651; *see also Lovell*, 466 F.3d at 898;

*In re Microsoft Corp.*, 127 F. Supp. 2d at 719; *Katz*, 9 F. Supp. 2d at 364-65.  In such cases, a defendant's compliance costs are unaffected by the number of plaintiffs that sue.  Considering the total costs to the defendant, then, does not circumvent—but is instead fully consistent with—the non-aggregation principle.[10]  *See* 463 F.3d at 651; *see also Lovell*, 466 F.3d at 898; *In re Microsoft Corp.*, 127 F. Supp. 2d at 719; *Katz*, 9 F. Supp. 2d at 364-65.  In sum, ExxonMobil would incur significant costs—well above the amount in controversy—if it were ordered to comply with Plaintiff's requested injunctive relief.  Because the cost to ExxonMobil is unaffected by the size of the class of District of Columbia consumers on whose behalf this suit is purportedly brought, the non-aggregation principle does not affect the amount in controversy.

## C.     Attorneys' Fees Independently Satisfy the Amount in Controversy

The award of attorneys' fees Plaintiff seeks for itself independently satisfies Section 1332(a)'s amount-in-controversy requirement.

### 1.     Plaintiff's Attorneys' Fees Will Certainly Exceed $75,000

It is well established that attorneys' fees "may be counted towards establishing a jurisdictional amount when they are provided for by" the "statute in controversy."  *Parker-Williams* v. *Charles Tini & Assocs., Inc.*, 53 F. Supp. 3d 149, 153 (D.D.C. 2014).  Here, Plaintiff seeks for itself an award of "reasonable attorneys' fees," Compl. at 26 (Prayer for Relief), as provided for in the CPPA, *see* D.C. Code § 28-3905(k)(2)(B).

In its Notice of Removal, ExxonMobil demonstrated—based on Plaintiff's counsel's $700 per hour billing rate in similar cases, as well as recent sizable attorneys' fee awards in other CPPA

---

[10] The remaining cases merely follow the other distinguishable or unpersuasive decisions without providing any independent analysis.  *See Smith* v. *Abbott Labs*, Civ. No. 16-501, 2017 U.S. Dist. LEXIS 135478, at *4 (D.D.C. Mar. 31, 2017); *Organic Consumers Ass'n* v. *Handsome Brook Farm Grp. 2, LLC*, 222 F. Supp. 3d 74, 78 (D.D.C. 2016).

actions—that it is not merely plausible, but *probable*, that the attorneys' fees in this case will independently exceed $75,000. *See* Notice ¶ 21; *Dart Cherokee*, 574 U.S. at 87-88.

### 2.    Attorneys' Fees Are Not Subject to Disaggregation

Even assuming the non-aggregation principle mandates the disaggregation of the cost of complying with the injunctive relief sought, disaggregation of attorneys' fees among the class of District of Columbia consumers is not appropriate here.

*First*, as explained, the non-aggregation principle applies where individual plaintiffs' claims must be aggregated to collectively satisfy the amount in controversy. *See Snyder*, 392 U.S. at 335 ("[T]he separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement."). Some courts within this District have observed that "the non-aggregation principle logically should extend to claims of attorneys' fees." *Breakman*, 545 F. Supp. 2d at 107; *see Animal Legal Def. Fund*, 249 F. Supp. 3d at 62. While that may be so for attorneys' fee awards that would be spread among clients who have retained counsel, the non-aggregation principle has no logical application where, as here, attorneys' fees will be awarded to and benefit only one plaintiff. The only potential beneficiary of the attorneys' fees sought in this case is Plaintiff itself. No one other than Beyond Pesticides has retained counsel to prosecute this action or incurred costs litigating it. The Complaint is unequivocal that "Plaintiff Beyond Pesticides . . . requests . . . an order granting *Plaintiff* costs and disbursements, including reasonable attorneys' fees." Compl. at 26 (Prayer for Relief) (emphasis added).

*Second*, even if attorneys' fees were somehow attributable to the class of District of Columbia consumers on whose behalf this suit is brought, a *pro rata* apportionment of fees between Plaintiff and the general public would still be inappropriate. Disaggregating attorneys' fees "between [a named plaintiff] and the general public on a pro rata basis" necessarily "underestimate[s] the portion of fees properly attributed to [the plaintiff] in [its] role as the initial

plaintiff." *Zuckman* v. *Monster Beverage Corp.*, 958 F. Supp. 2d 293, 301 (D.D.C. 2013).  This is so, courts have explained, because the lead plaintiff "likely would have still chosen to bring [its] suit even if [it] could assert only individual claims," in which case "the work required of [it]s attorneys would be substantially more than the pro rata portion of the hourly fees."  *Id.*  Here, Plaintiff's allegations indicate that it likely would have brought this suit even if it could do so only on its own behalf.[11]  *See, e.g.*, Compl. ¶ 128 ("Beyond Pesticides has an interest in truth-in-advertising regarding environmental concerns."); *id.* ¶ 130 ("[T]he fossil fuel industry has long been a central concern of Beyond Pesticides.").  Plaintiff's costs, therefore, are its own.

Plaintiff's argument that, under *Zuckman*, "the amount of attorney's fees applicable to it for jurisdictional purposes are $0," Br. 5, is unpersuasive.  In *Zuckman*, plaintiff brought a private attorney general suit under the CPPA, alleging that defendant had misrepresented the safety of its energy drinks, for which plaintiff sought statutory damages and attorneys' fees.  958 F. Supp. 2d at 296.  To address its concern that disaggregation of attorneys' fees necessarily "underestimate[s] the portion of fees properly attributed to [the plaintiff]," the court adopted a "preferable approach," one that involved multiplying the statutory damages plaintiff sought by a reasonable contingency fee.  *Id.* at 301.  In that case, the maximum statutory damages award available to plaintiff was $30,000; based on a "reasonable contingency fee" of 33%, the attorneys' fee award for purposes of the amount-in-controversy was $10,000.  *Id.*

Some courts have observed that because an injunction, unlike damages, is not numerical, it cannot be multiplied by a contingency fee to produce a numerical attorneys' fee award.  This has led some courts to conclude that, where only injunctive relief is sought, the attorneys' fee award

---

[11] ExxonMobil does not concede, but rather denies, that these allegations suffice to establish Plaintiff's standing to sue.  *See also Bauer* v. *Marmara*, 774 F.3d 1026, 1029 (D.C. Cir. 2014).

relevant to the amount in controversy under the *Zuckman* method must be zero.  *See* Pl.'s Br. 5 (collecting cases).  But the fact that injunctive relief is generally not quantitative simply means that the *Zuckman* method is *inapplicable* in such cases.  *See, e.g.*, *Hackman*, 2019 WL 1440202, at *8.  The *Zuckman* method, after all, was designed to prevent attorneys' fees from being "*underestimate[d]*" in a jurisdictional calculation.  958 F. Supp. 2d at 301 (emphasis added).  It simply does not have application here.

## II.    This Court Has Jurisdiction under the Class Action Fairness Act

The Class Action Fairness Act permits removal of (1) any "class action;" (2) where minimal diversity exists; (3) at least 100 class members are represented; and (4) the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d).  Here, all four criteria are satisfied.

Plaintiff does not dispute that CAFA's second, third, and fourth elements are satisfied. Since the parties are completely diverse, *see supra* at 6, they are also minimally diverse, *see id.* § 1332(d)(2)(A) (requiring only that "any member of a class of plaintiffs" be "a citizen of a State different from any defendant").  The class of District of Columbia consumers on whose behalf Plaintiff purportedly sues numbers in the hundreds of thousands, well over the 100-person threshold.  *See* Pl.'s Br. 1.  And the amount in controversy—the combination of the cost to ExxonMobil of complying with injunctive relief and Plaintiff's requested attorneys' fee award— exceeds CAFA's $5 million threshold.[12]  *See supra* at 7-9, 15-16; 28 U.S.C. § 1332(d)(2).  That leaves at issue only the first element—whether Plaintiff's private attorney general suit is a "class action" within the meaning of CAFA.  28 U.S.C. § 1332(d)(1)(B).

---

[12] CAFA expressly permits "the claims of the individual class members [to] be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(6).

CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure *or similar state statute or rule* of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id.* § 1332(d)(1)(B) (emphasis added). CAFA's legislative history, which Plaintiff does not discuss, emphasizes the definition's wide scope: "[T]he 'definition of a class action,'" Congress announced, "is to be interpreted liberally. Its application should not be confined solely to lawsuits that are labeled 'class actions.' Generally speaking, lawsuits that resemble a purported class action should be considered class actions for purposes of applying these provisions." S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34 (formatting altered); *see also McMullen* v. *Synchrony Bank*, 82 F. Supp. 3d 133, 140 (D.D.C. 2015) (relying on CAFA's legislative history to interpret its scope). Put differently, CAFA permits removal of a suit that is "in substance a class action," notwithstanding a plaintiff's "attempt to disguise the true nature of the suit." *Addison Automatics*, 731 F.3d at 742; *see Song*, 2017 WL 1149286, at *1 n.1.

*Song* is particularly instructive. There, plaintiff sued various cable companies, alleging that "defendants unlawfully charge California consumers a surcharge of $8.75 per customer per month." 2017 WL 1149286, at *1. "Though he did not style his complaint as a class action," Song asserted that he "brought the lawsuit to end Charter's unlawful actions, not only for his benefit but for the benefit of the millions of California consumers whom Charter continues to target with this illegal and fraudulent scheme." *Id.* On these facts, the court found the prerequisites to CAFA jurisdiction satisfied. Lawsuits like Song's "that *resemble* a purported class action," the court held, "should be considered class actions" for purposes of CAFA. *Id.* at *1 n.1 (emphasis added).

So, too, here.   Plaintiff claims that "consumers within the District have obtained" ExxonMobil's petroleum products "under . . . misrepresentations made by ExxonMobil."  Compl. ¶ 150.  Plaintiff purports to bring this private attorney general action under Section 28-3905(k)(1)(D) of the CPPA not only "on behalf of itself," *id.* ¶¶ 16, 138, but also as "a public interest organization . . . on behalf of the interests of a consumer or a *class of consumers*" whom ExxonMobil has allegedly "misled and deceived." *id.* ¶¶ 107, 151 (quoting D.C. Code § 28-3905(k)(1)(D)) (emphasis added).  Moreover, like a lead plaintiff in a class action, *see* Fed. R. Civ. P. 23(a)(4), Plaintiff touts its relevant experience and ability to "adequately represent" those consumers' "interests," Compl. ¶¶ 132, 147; *see id.* ¶ 152 ("Beyond Pesticides has retained . . . competent counsel, who have significant experience under the CPPA, to pursue this action, and Beyond Pesticides has previously represented consumers in similar actions under the CPPA.").  Therefore, just like *Song*, this is a class action "in substance," and thus constitutes a "class action" under CAFA.

Indeed, Plaintiff's other arguments make clear that it cannot avoid this conclusion.  In arguing that the amount in controversy must be disaggregated, Plaintiff contends that it has brought this suit on behalf of District of Columbia consumers, each of whom will benefit from any injunctive relief granted.  *See* Br. 3-4.  Similarly, in asserting that the cost of the injunctive relief to ExxonMobil must be divided on a *pro rata* basis, Plaintiff maintains that the consumers on whose behalf it sues will all *equally* benefit from the injunctive relief granted.  *See id.*  Such a suit is *by definition* a class action, *i.e.*, a "representative suit[] on behalf of [a] group[] of persons similarly situated."  1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 1.1 (4th ed. 2002).  Plaintiff should not be permitted to invoke its representative role for purposes of refuting

diversity jurisdiction, and then suddenly abandon that role for purposes of avoiding CAFA jurisdiction.

Straining to avoid this obvious conclusion, Plaintiff attempts to narrow CAFA's intentionally broad definition of a "class action." *See* S. Rep. No. 109-14, at 35. Plaintiff contends that an action not styled as a class action can satisfy CAFA only if it is subject to procedural requirements "equivalen[t]" to those of Federal Rule of Civil Procedure 23. *See* Br. 8-9; Fed. R. Civ. P. 23. But even assuming CAFA demands such equivalency, Plaintiff's suit meets—and surpasses—any such requirement. Private attorney general suits under Section 28-3905(k)(1)(D) of the CPPA are governed by D.C. Superior Court Rule 23, which is not merely equivalent, but "identical," to Federal Rule 23 in all relevant respects.[13] *See* D.C. Super. Ct. R. Civ. P. 23 cmt.

In *Rotunda* v. *Marriott International, Inc.*, 123 A.3d 980 (D.C. 2015), the District of Columbia Court of Appeals held that Superior Court Rule 23 applies to private attorney general claims under the CPPA. There, plaintiff brought CPPA claims for damages on behalf of himself and the "general public," but expressly disclaimed "any intention to seek class certification" under Superior Court Rule 23. *Id.* at 982. The Superior Court dismissed the representative portion of the suit, holding that a CPPA claim for money damages "brought by an individual on behalf of himself and other similarly situated members of the general public is *in essence a class action*, whether pled as such or not, and must satisfy the requirements of Rule 23." *Id.* (emphasis added). On appeal, the Court of Appeals affirmed. *See id.*

---

[13] Plaintiff's reliance on *Massachusetts* v. *Exxon Mobil Corp.*, Civ. No. 19-12430, 2020 U.S. Dist. LEXIS 93153 (D. Mass. May 28, 2020), is thus misplaced. The state statute at issue in *ExxonMobil* was not subject to procedures "identical" to Federal Rule of Civil Procedure 23, D.C. Super. Ct. R. Civ. P. 23 cmt.

The Court of Appeals held that Rule 23 was a necessary complement to CPPA suits brought on behalf of the "general public" because, without the application of Rule 23, those suits would raise "unique challenges to procedural fairness and administration." *Id.* at 989. The CPPA itself "says nothing on the critical issue of how absent class members of the represented class are to be given notice so as to make their own decisions whether to be bound by the suit," thus requiring the application of Rule 23. *Id.* at 985. Trial courts would also face "deep uncertainty" in their "effort[s] to regulate CPPA actions on behalf of the general public" without Rule 23's tools for managing suits "brought on behalf of a potentially vast number of plaintiffs." *Id.* at 986. Based on these concerns, the Court of Appeals concluded that Rule 23 must apply in the absence of "clear[]" and "explicit proof" "that the legislature has taken them into account before displacing" Rule 23's "framework." *Id.* at 988-89. Finding the CPPA to be "virtually silent" on this issue, the Court of Appeals held that Rule 23 provided the "necessary vehicle" for representative suits under the CPPA.[14] *Id.* at 985, 988-89.

Although, as Plaintiff observes, *Rotunda* involved a CPPA claim for damages, *see* Br. 9-10, the rationales underlying the *Rotunda* Court's holding apply with equal force to class claims for injunctive relief that, like Plaintiff's, are brought on behalf of a "class of consumers" pursuant to Section 28-3905(k)(1)(D). Each one of them supports applying *Rotunda* to CPPA actions seeking injunctions.

*First*, as with class claims for damages, the CPPA provides no independent means for protecting absent injunctive-class members who will be bound by a judgment. *Rotunda*, 123 A.3d

---

[14] *Baumann* v. *Chase Investment Services Corp.*, 747 F.3d 1117 (9th Cir. 2014), on which Plaintiff relies, *see* Br. 8, 9, is thus distinguishable. There, the Ninth Circuit held that actions brought under the California Labor Code Private Attorneys General Act of 2004 ("PAGA") are not "class action[s]" within the meaning of CAFA based in part on the California Supreme Court's "holding that PAGA actions are not class actions under state law." *Baumann*, 747 F.3d at 1122.

at 985-86.  And, as it does for class claims for damages, Rule 23 affords the procedures necessary to protect those class members.  Rule 23(b)(2) provides for class actions seeking injunctive relief where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  D.C. Super. Ct. R. Civ. P. 23 (b)(2); *see Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 361-62 (2011) (noting that a request for common injunctive relief presents "one of the most traditional justifications for class treatment").  Rule 23(a), to which Rule 23(b)(2) classes are subject, permits absent class members to be bound only where the representative party "fairly and adequately protect[s] the interests of the class," and the claims of the representative party are "typical" of the claims of the class.  D.C. Super. Ct. R. Civ. P. 23(a).  These conditions are especially important for Rule 23(b)(2) classes, which are mandatory and do not afford class members an opportunity to opt out.[15]  *See Barnes* v. *Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998) (finding that the mandatory nature of Rule 23(b)(2) actions raises the due process concern that "it would be unjust to bind absent class members to a negative decision where the class representatives' claims present different individual issues than the claims of the absent members").

*Second*, Rule 23 allays the concerns inherent in managing otherwise unwieldy injunctive relief claims brought under Section 28-3905(k)(1)(D) "on behalf of a potentially vast number of plaintiffs."  *Rotunda*, 123 A.3d  at 986; *see* D.C. Code § 28-3905(k)(1)(D)(i) (authorizing suit on behalf of a "class of consumers").  Rule 23(b)(2), for example, requires the lead plaintiff to

---

[15] Rule 23(d) offers still more protections to absent injunctive relief class members.  It provides, among other things, that the court may require, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such a manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action. D.C. Super. Ct. R. Civ. P. 23(d)(1).

establish "that the putative class is sufficiently cohesive to warrant class treatment," which is necessary to ensure that actions on behalf of numerous individuals do not "become so unmanageable that the primary purpose of the class action device—*i.e.*, advancing judicial economy and class-wide treatment—[is] destroyed." *Lightfoot* v. *District of Columbia*, 273 F.R.D. 314, 329 & n.12 (D.D.C. 2011); *see Barnes*, 161 F.3d at 143 (explaining that, without the cohesiveness requirement, "suit[s] could become unmanageable").

*Third*, while Rule 23 actions are binding on members of a class, *Taylor* v. *Sturgell*, 553 U.S. 880, 893-94 (2008), it is unclear whether, outside the Rule 23 framework, a judgment in a Section 28-3905(k)(1)(D) action on behalf of District of Columbia consumers would preclude identical claims by absent third parties in follow-on cases, especially if no finding was made that the named plaintiff was an adequate representative of the members of the public whom that plaintiff sought to represent. *See id.* at 897-98 (stating that a nonparty is adequately represented for *res judicata* purposes only if there were special procedures to safeguard the interests of the absentees). If no preclusive effect is afforded to such a judgment, consumers or public interest organizations would be free to bring duplicative claims for (potentially conflicting) injunctive relief against the same defendant based on the same underlying facts.

Accordingly, given the CPPA's "virtual[] silen[ce]" on the applicability of Rule 23 to private attorney general actions for injunctive relief, as well as the absence of a "clear statement of [legislative] intention" to displace Rule 23, Rule 23 provides the "necessary vehicle" for Section 28-3905(k)(1)(D) suits for injunctive relief, just as it does in the analogous context of suits for money damages. *See Rotunda*, 123 A.3d at 989. Thus, even assuming that procedures equivalent to Federal Rule 23 must apply to an action for it to be considered a "class action" under CAFA,

those procedures apply to Plaintiff's CPPA claim for injunctive relief under Section 28-3905(k)(1)(D).

The handful of district court decisions to which Plaintiff points are not to the contrary. *National Consumers League* v. *Flowers Bakeries, LLC*, 36 F. Supp. 3d 26 (D.D.C. 2014), which held that Section 28-3905(k)(1)(D) actions are not "class actions" under CAFA, was decided prior to, and thus without the guidance of, the Court of Appeals' decision in *Rotunda*.  The *Flowers Bakeries* court therefore could not have definitively resolved the issue on which Plaintiff contends CAFA jurisdiction turns: whether Section 28-3905(k)(1)(D) actions are governed by procedures "equivalen[t]" to Federal Rule of Civil Procedure 23.

All of the remaining decisions, although issued after *Rotunda*, involve claims brought under different CPPA private attorney general provisions than Section 28-3905(k)(1)**(D)**, the one at issue here.  *See Hackman*, 2019 WL 1440202, at *1 (§ 28-3905(k)(1)**(B)**); *Animal Legal Def. Fund*, 249 F. Supp. 3d at 64 (§ 28-3905(k)(1)**(C)**); Complaint ¶ 33, *Smith* v. *Abbott Labs., Inc.*, 2017 U.S. Dist. LEXIS 135478 (D.D.C. Mar. 30, 2017) (No. 16-501), ECF No. 1-2 (§ 28-3905(k)(1)**(B)**).  Only Section 28-3905(k)(1)(D), under which Plaintiff sues, expressly authorizes actions to be brought "on behalf of the interests of a consumer *or class of consumers*."  *See* D.C. Code § 28-3905(k)(1)(D) (emphasis added) ("A public interest organization may, on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action under . . . this paragraph for relief from such use by such person of such trade practice.").  But the decisions Plaintiff relies on arise under Sections 28-3905(k)(1)(B) or (C), which do not refer to a "class of consumers."  *See id.* § 28-3905(k)(1)(B) ("An individual may, on behalf of that individual, or on behalf of both the individual and the general public, bring an action seeking relief

from the use of a trade practice in violation of a law of the District when that trade practice involves consumer goods or services that the individual purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes."); *id.* § 28-3905(k)(1)(C) ("A nonprofit organization may, on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District, including a violation involving consumer goods or services that the organization purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes.").

In sum, whether it is because Plaintiff's suit is "in substance" a class action, or because it is governed by procedures equivalent to Federal Rule of Civil Procedure 23, this action is a "class action" within the meaning of CAFA.  Because minimal diversity exists, at least 100 class members are represented, and the amount-in-controversy exceeds $5,000,000, all of CAFA's jurisdictional requirements are satisfied.  *See* 28 U.S.C. § 1332(d).

## III.    Plaintiff Is Not Entitled to Attorneys' Fees or Costs

A plaintiff opposing removal is entitled to attorneys' fees or costs under Section 1447(c) only if it can show that "the removing party lacked an objectively reasonable basis for seeking removal."  *Martin* v. *Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).  Conversely, "when an objectively reasonable basis exists, fees should be denied."  *Id.*  In this Circuit, a defendant's basis for removal is "objectively reasonable" so long as there is "at least some logical and precedential force behind it . . . regardless of whether" it "is correct."  *Knop* v. *Mackall*, 645 F.3d 381, 383-84 (D.C. Cir. 2011).

ExxonMobil's arguments in support of diversity and CAFA jurisdiction are more than objectively reasonable; they are correct.  ExxonMobil has furnished evidence that it will incur millions in costs to comply with Plaintiff's requested injunctive relief, *see generally* Jeffers Decl.,

and has cited persuasive case law demonstrating that the non-aggregation principle is either inapplicable, *see, e.g.*, *Weinberger*, 377 F. Supp. at 866, or satisfied, *see, e.g.*, *Synfuel*, 463 F.3d at 652; *Hain Celestial*, 285 F. Supp. 3d at 102 n.2.  ExxonMobil has also shown, based on Plaintiff's counsel's own filings, that its requested attorneys' fee award will almost inevitably exceed the requisite amount in controversy, and has explained why disaggregation of attorneys' fee awards is unwarranted where, as here, the fees will benefit Plaintiff alone.  *See* Notice ¶ 21; Compl. at 26 (Prayer for Relief).

ExxonMobil has also shown (again with persuasive case law) that Plaintiff's representative suit on behalf of a class of District of Columbia consumers is a "class action" for purposes of CAFA, either because it is "in substance" a class action, *see, e.g.*, *Song*, 2017 WL 1149286, at *1, or because it is governed by procedures "identical" to Federal Rule of Civil Procedure 23, *see Rotunda*, 123 A.3d at 189.  These arguments, all supported by indisputable facts and controlling or persuasive case law, are more than objectively reasonable.  *See Knop*, 645 F.3d at 384 (vacating attorneys' fee award where defendant's argument for removal had "convinced one federal district court").

Plaintiff suggests that ExxonMobil's otherwise reasonable arguments are rendered "unreasonable" by the existence of  non-binding decisions that, in Plaintiff's view, bolster its case for remand.  *See* Br. 12.  But *none* of the authority Plaintiff relies on is controlling.  Indeed, the courts whose decisions Plaintiff cites in support of remand—including those in which Plaintiff's counsel has appeared as counsel of record—have *unanimously* refused to grant attorneys' fees "[g]iven the lack of precedent in this Circuit" on these issues.  *See Breathe DC*, 232 F. Supp. 3d at 172; *see also Food & Water Watch*, 2020 WL 1065553, at *5; *R.C. Bigelow, Inc.*, 314 F. Supp. 3d at 358.  The only case Plaintiff cites in which an attorneys' fee motion was granted, *Stein* v.

*American Express Travel Related Services*, 813 F. Supp. 2d 69 (D.D.C. 2011), is plainly distinguishable. The *Stein* court was explicit that fees were awarded in part because, unlike here, "Plaintiffs' counsel initiated communications with Defendants' counsel to advise them of the relevant case law." *Id.* at 74. Further, the *Stein* court reprimanded defendants for asserting "several inappropriate, and obviously unpersuasive, arguments," including "[in]tolera[ble]" and unsubstantiated accusations of unethical conduct on the part of plaintiffs' counsel. *Id.* at 71 n.1. The facts at issue in *Stein* are far removed from those present here.

## CONCLUSION

For the foregoing reasons, this Court has subject matter jurisdiction over this action and Plaintiff's motion to remand and for fees and costs should be denied. Diversity jurisdiction is proper because the parties are indisputably diverse, and the amount in controversy is satisfied based on either (or the combination of) the cost to ExxonMobil of overhauling its advertising to comply with Plaintiff's requested injunction, or Plaintiff's requested attorneys' fees. The court also may exercise subject matter jurisdiction under CAFA. Plaintiff does not dispute that the amount in controversy, minimal diversity, or class size requirements are satisfied, and this suit, brought in a representative capacity on behalf of a class of District of Columbia consumers, is "in substance" a class action governed by procedures equivalent to Rule 23. Finally, ExxonMobil's arguments for removal are not only correct, but objectively reasonable such that an award of attorneys' fees and costs is unwarranted.

DATE: September 4, 2020

Respectfully submitted,

EXXON MOBIL CORPORATION,

By its attorneys,

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON, LLP

/s/ Theodore V. Wells, Jr.
Theodore V. Wells, Jr.
Daniel J. Toal
twells@paulweiss.com
dtoal@paulweiss.com
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:  (212) 373-3000
Fax:  (212) 757-3990

Justin Anderson
janderson@paulweiss.com
2001 K Street, NW
Washington, DC 20006-1047
Tel:  (202) 223-7300
Fax:  (202) 223-7420

EXXON MOBIL CORPORATION

Patrick J. Conlon
patrick.j.conlon@exxonmobil.com
22777 Springwoods Village Parkway
Spring, TX 77389
Tel:  (832) 624-6336